# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, et al.,<br><br>　　　　Defendants. | Case No.<br>1:24-cv-00756-JPW<br><br><br>**MODIFIED STIPULATED FINAL JUDGMENT AND ORDER** |

　　　　The Consumer Financial Protection Bureau ("Bureau") commenced this civil action on May 6, 2024 to obtain injunctive and monetary relief and civil penalties from Pennsylvania Higher Education Assistance Agency ("PHEAA"), also doing business as American Education Services ("AES") and The National Collegiate Master Student Loan Trust I, The National Collegiate Student Loan Trust 2003-1, The National Collegiate Student Loan Trust 2004-1, The National Collegiate Student Loan Trust 2004-2, The National Collegiate Student Loan Trust 2005-1, The National Collegiate Student Loan Trust 2005-2, The National Collegiate Student Loan Trust 2005-3, The National Collegiate Student Loan Trust 2006-1, The National Collegiate Student Loan Trust 2006-2, The National Collegiate Student Loan Trust 2006-3, The National Collegiate Student Loan Trust 2006-4, The National Collegiate Student Loan Trust 2007-1, The National Collegiate Student Loan Trust 2007-2, The National Collegiate Student Loan Trust 2007-3, The National Collegiate Student Loan Trust 2007-4 (collectively "NCSLTs" or "the Trusts"). The Complaint alleges violations of sections

1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5531(a), 5536(a)(1)(B), in connection with the servicing of student loans owned by the Trusts.

The Bureau and Defendants agree to entry of this Modified Stipulated Final Judgment and Order ("Order"), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

## FINDINGS

1. This Court has personal jurisdiction over the parties and jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1345.

2. Defendants neither admit nor deny the allegations in the Complaint, except as specified in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish the Court's jurisdiction over them and the subject matter of this action.

3. Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4. Entry of this Order is in the public interest. The prior orders issued on October 1, 2024, Dkt. Nos. 50–51, are hereby modified and replaced by this Order.

# DEFINITIONS

5. The following definitions apply to this Order:

   a. "Affected Consumer" means any Student Borrower or Co-signer for an NCSLT Loan that submitted an Affected Request.

   b. "Affected Request" means a Request for SCRA Benefits.

   c. "Consumer Reporting Agency" or "CRA" means the definition set forth in 15 U.S.C. § 1681a(f).

   d. "Co-signer" means an obligor on an NCSLT Loan other than a Student Borrower.

   e. "Date Transaction Effective" means the data point in Defendant PHEAA's system of record reflecting the historical date on which a retroactive transaction or other loan account adjustment should have taken effect.

   f. "Defendant PHEAA" means Pennsylvania Higher Education Assistance Agency, d/b/a American Education Services, and its successors and assigns.

   g. "Effective Date" means October 1, 2024.

   h. "Exception Request" means any request by a Student Borrower or Co-signer made before the Effective Date that, at the time of the request, Defendant PHEAA lacked the authority to decide under the Servicing Guidelines, asserted

    it lacked the authority to decide under the Servicing Guidelines, or sent to another entity for decision, as provisionally identified by Defendants on October 31, 2024.

i. "NCSLT Defendants" means (1) The National Collegiate Master Student Loan Trust I, (2) The National Collegiate Student Loan Trust 2003-1, (3) The National Collegiate Student Loan Trust 2004-1, (4) The National Collegiate Student Loan Trust 2004-2, (5) The National Collegiate Student Loan Trust 2005-1, (6) The National Collegiate Student Loan Trust 2005-2, (7) The National Collegiate Student Loan Trust 2005-3, (8) The National Collegiate Student Loan Trust 2006-1, (9) The National Collegiate Student Loan Trust 2006-2, (10) The National Collegiate Student Loan Trust 2006-3, (11) The National Collegiate Student Loan Trust 2006-4, (12) The National Collegiate Student Loan Trust 2007-1, (13) The National Collegiate Student Loan Trust 2007-2, (14) The National Collegiate Student Loan Trust 2007-3, (15) The National Collegiate Student Loan Trust 2007-4, collectively or individually, and their respective successors and assigns.

j. "NCSLT Loan" means any private student loan that is or was owned, held by, or securitized by the NCSLT Defendants.

k. "Period of Military Service" means the definition in the Servicemembers Civil Relief Act, 50 U.S.C. § 3911(2)-(3), 50 U.S.C. § 3937(b)(2), and 50 U.S.C. § 3917(a)-(c).

l.  "Request for SCRA Benefits" means any Exception Request for SCRA Benefits, or a request for SCRA Benefits generated by Defendant PHEAA's identification of a servicemember's Period of Military Service through the Defense Manpower Data Center (DMDC), made on or after January 1, 2015, that:

   i. remains pending;

   ii. was not decided within 30 days of the date of the request; or

   iii. was denied before May 4, 2021.

m. "Servicemembers Civil Relief Act Benefits" or "SCRA Benefits" means the 6% interest rate limitation available to servicemembers during the Period of Military Service pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. § 3937(a)(1)(B), or under the Servicing Guidelines, the April 19, 2021 letter to Defendant PHEAA from the Administrator, or Defendant PHEAA's NCSLT Loan servicing policies, procedures, staff guidance, or alerts.

n. "Servicing Guidelines" means the Servicing Guidelines for TERI Loan Programs Serviced at Pennsylvania Higher Education Assistance Agency (d/b/a American Education Services), attached as Exhibit B to the September 28, 2006 Amended and Restated Private Student Loan Servicing Agreement Between Pennsylvania Higher Education Assistance Agency and The First Marblehead Corporation,

and all subsequent amendments thereto, including but not limited to letter-amendments which are commonly referred to as "Read and Agreed" letters.

o. "Student Borrower" means the obligor on an NCSLT Loan for whose educational expenses the loan was made.

p. "Trust Related Agreements" means all agreements in force as of the date of this Order to which the NCSLT Defendants are a party and that relate to the securitization or servicing of NCSLT Loans.

## I.

## Review of Affected Requests

6.    Defendant PHEAA must conduct a review of all Affected Requests and provide redress in accordance with the provisions described in paragraphs 7–9. None of the relief should be structured in a manner that necessitates issuing a Form 1099 to an Affected Consumer. Accordingly, Defendant PHEAA shall (and to the extent necessary, the NCSLT Defendants shall ensure, to the fullest extent of NCSLT Defendants' rights under the Trust Related Agreements, that the relevant servicing, special servicing, or sub-servicing entity is directed to) not issue a Form 1099-C or otherwise report cancellation of debt income with respect to Affected Consumers. Nothing in this paragraph shall preclude Defendant PHEAA or the special subservicer from issuing any Affected Consumer a Form 1099-C in the event and to the extent an Affected Consumer experiences any form

of debt relief or cancellation during the life of their loan which is unaffiliated with the relief contemplated under this Order.

*Requests for Servicemembers Civil Relief Act (SCRA) Benefits*

7. To the extent not already completed, for Requests for SCRA Benefits on NCSLT Loans that are performing as of the Effective Date, and were eligible for SCRA Benefits as of the date of the request (which encompasses retroactive eligibility as per 50 U.S.C. § 3937(b)), Defendant PHEAA shall (and to the extent necessary, NCSLT Defendants shall ensure, to the fullest extent of their rights under the Trust Related Agreements, the relevant servicing, special servicing, or sub-servicing entity is directed to):

   a. retroactively apply a 6% interest rate limitation during the Student Borrower or Co-signer's Period of Military Service and reimburse any overpayments to the Student Borrower by applying a credit to the Student Borrower or Co-signer's account. Interest includes service charges, renewal charges, fees, or any other charges (except bona fide insurance) with respect to an obligation or liability, 50 U.S.C. § 3937(d)(1);

   b. submit corrections to all CRAs to whom Defendant PHEAA furnished credit reporting information as to the Student Borrower or Co-signer to correct all fields that were furnished incorrectly as a result of incorrectly determining the payment amount or any delinquency based on an application to the account of an interest rate greater than a 6% interest rate; and

    c. waive or reapply as a credit to the consumer's account any late fees assessed during the Student Borrower or Co-signer's Period of Military Service, and ensure any such waiver or credit of fees paid is applied with the Date Transaction Effective as the date that the fee was originally assessed.

8. To the extent not already completed, for Requests for SCRA Benefits on NCSLT Loans that have been charged-off as of the Effective Date, were eligible for SCRA Benefits as of the date of the request (which encompasses retroactive eligibility as per 50 U.S.C. § 3937(b)), and had an interest rate above 6% at any time during the Student Borrower or Co-signer's Period of Military Service, Defendant PHEAA shall (and to the extent necessary, NCSLT Defendants shall ensure, to the fullest extent of their rights under the Trust Related Agreements, the relevant servicing, special servicing, or sub-servicing entity is directed to):

    a. retroactively apply a 6% interest rate limitation during the Student Borrower or Co-signer's Period of Military Service and reimburse any overpayments to the Student Borrower by applying a credit to the Student Borrower or Co-signer's account. Interest includes service charges, renewal charges, fees, or any other charges (except bona fide insurance) with respect to an obligation or liability, 50 U.S.C. § 3937(d)(1);

    b. submit corrections to all CRAs to whom Defendant PHEAA furnished credit reporting information as to the Student Borrower or Co-signer to correct all fields that were furnished incorrectly as a result of incorrectly determining

       the payment amount or any delinquency based on an application to the account of an interest rate greater than a 6% interest rate; and

   c. waive or reapply as a credit to the consumer's account (or, if there is no longer a balance on the account, issue a refund of) any late fees charged during the Student Borrower or Co-signer's Period of Military Service.

9. To the extent not already completed, for Requests for SCRA Benefits on NCSLT Loans that have been paid in full as of the Effective Date, and were eligible for SCRA Benefits as of the date of the request (which encompasses retroactive eligibility as per 50 U.S.C. § 3937(b)), Defendant PHEAA shall (and to the extent necessary, NCSLT Defendants shall ensure, to the fullest extent of their rights under the Trust Related Agreements, the relevant servicing, special servicing, or sub-servicing entity is directed to):

   a. retroactively apply a 6% interest rate limitation during the Student Borrower or Co-signer's Period of Military Service, and reimburse any overpayments to the Student Borrower. Interest includes service charges, renewal charges, fees, or any other charges (except bona fide insurance) with respect to an obligation or liability, 50 U.S.C. § 3937(d)(1);

   b. submit corrections to all CRAs to whom Defendant PHEAA furnished credit reporting information as to the Student Borrower or Co-signer to correct all fields that were furnished incorrectly as a result of incorrectly determining

      the payment amount or any delinquency based on an application to the account of an interest rate greater than a 6% interest rate; and

  c. waive or reapply as a credit to the consumer's account (or, if there is no longer a balance on the account, issue a refund of) any late fees assessed during the Student Borrower or Co-signer's Period of Military Service, and ensure any such waiver or credit of fees paid is applied with the Date Transaction Effective as the date that the fee was originally assessed.

## II.

## Civil Money Penalties

**IT IS FURTHER ACKNOWLEDGED** that:

    10. Under § 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint, NCSLT Defendants, collectively, have paid a civil money penalty of $400,000 to the Bureau, and Defendant PHEAA has paid a civil money penalty of $1,750,000 to the Bureau.

    11. The civil money penalties paid under this Order have been deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

## III.

## Release

12.	The Bureau releases and discharges Defendants from all potential liability for law violations that the Bureau has or might have asserted based on the allegations of the Complaint, to the extent such conduct occurred before the Effective Date and the Bureau knows about such conduct as of the Effective Date. The Bureau may use the practices described in the Complaint in future enforcement actions against Defendants and their affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violations of this Order.

## IV.

## Service

13.	This Order may be served upon the Defendants by electronic mail, certified mail, or United Parcel Service, either by the United States Marshal, the Clerk of the Court, or any representative or agent of the Bureau.

**IT IS SO ORDERED**.

DATED this ____ day of _____, 20___.

_____
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania