UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>  Plaintiff,<br><br>  v.<br><br>PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, et al.,<br><br>  Defendants. | Case No. 1:24-cv-00756-JPW |

## BRIEF IN SUPPORT OF JOINT MOTION FOR MODIFICATION OF STIPULATED JUDGMENTS

Pursuant to a resolution reached by Plaintiff the Consumer Financial Protection Bureau (the "CFPB"), Defendant Trusts,[1] Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA"), and Intervenor Pacific Investment Management Company LLC ("PIMCO"), in its capacity as investment manager or adviser for certain investment vehicles (the "PIMCO-Managed Funds") that own notes issued by Defendant Trusts through the Third Circuit's mediation program, the parties respectfully request that the Court modify the Stipulated Final Judgments and Orders ("Stipulated Judgments") against the Trusts, Dkt. No. 50, and

---

[1] The Trusts are the National Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust ("NCSLT") 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4.

PHEAA, Dkt. No. 51, pursuant to Federal Rule of Civil Procedure 60(b)(5) to omit certain of the provisions that impose prospective obligations on the CFPB, the Trusts, and PHEAA (the "Prospective and Injunctive Provisions"), while retaining a narrower set of such obligations in keeping with the CFPB's priorities.[2] All of the parties join this request.

Modification of the Stipulated Judgments to narrow the Prospective and Injunctive Provisions is a necessary condition for the implementation of a settlement that the parties negotiated during the mediation process ordered by the Third Circuit in connection with the appeal of PIMCO. That settlement would achieve a fair compromise among the parties that both reflects the possibility of a reversal by the Third Circuit and continues to further the CFPB's current enforcement priorities. Specifically, the CFPB would retain the civil money penalties the Trusts and PHEAA have already paid; redress would be implemented for certain borrowers consistent with the protections of the Servicemembers Civil Relief Act ("SCRA"); the releases afforded to the Trusts and PHEAA would remain in place; and PIMCO would voluntarily dismiss its appeal. At the same time, the parties would be relieved

---

[2] The Prospective and Injunctive Provisions are Sections I–IV, VI–XIII, and XV of Dkt. No. 50, and Sections I–V, VII–XIV, and XVI of Dkt. No. 51. A Proposed Modified Stipulated Judgment is attached to this brief as Exhibit A. As reflected in Exhibit A, for the sake of clarity and streamlining, the parties propose merging the Stipulated Judgments against the Trusts and PHEAA into a single, consolidated Modified Stipulated Judgment against all Defendants.

2

of all other obligations under the Stipulated Judgments, thereby concluding and bringing finality to this proceeding.

Under these circumstances, it is no longer equitable to apply the Prospective and Injunctive Provisions in their original form, as they create a barrier to settlement. The Court should therefore modify the Stipulated Judgments pursuant to Rule 60(b)(5) to effectuate the resolution reached by the parties through the Third Circuit's mediation program.

## PROCEDURAL AND FACTUAL HISTORY

The CFPB initiated this case on May 6, 2024 by filing a complaint against the Trusts and PHEAA alleging violations of the Consumer Financial Protection Act of 2010. Dkt. No. 1. Simultaneously, the parties jointly moved the Court to approve two proposed stipulated orders resolving the CFPB's claims against the Trusts and PHEAA. Dkt. No. 3.

Although the Trusts supported the motion to approve the proposed stipulated orders, they urged the Court to hold that motion in abeyance until noteholders in the Trusts' debt securities had an opportunity to present any objections to the Court. Dkt. No. 7. The Court agreed and set a briefing schedule for any noteholder objections. Dkt. No. 13.

The PIMCO-Managed Funds own notes issued by the Defendant Trusts. PIMCO, in its capacity as investment manager or adviser for the PIMCO-Managed

Funds intervened in this matter, Dkt. Nos. 32, 46, and objected to the proposed stipulated order against the Trusts on several grounds, Dkt. No. 33. The Trusts and CFPB opposed PIMCO's objections. Dkt. Nos. 36–37. No other noteholders intervened.

On October 1, 2024, the Court overruled PIMCO's objections and granted the joint motion to enter the proposed stipulated orders. Dkt. No. 48. In accordance with that opinion, the Court separately entered the Stipulated Judgments against the Trusts, Dkt. No. 50, and PHEAA, Dkt. No. 51.

The Stipulated Judgments require the Trusts and PHEAA to pay civil money penalties of $400,000 and $1,750,000, respectively; release the Trusts and PHEAA of certain claims; and impose a host of forward-looking obligations on the Trusts, PHEAA, and the CFPB alike through the Prospective and Injunctive Provisions.

Under the Prospective and Injunctive Provisions, the Trusts and PHEAA must, among other things, develop comprehensive compliance and redress plans; identify any borrowers impacted by the servicing issues alleged in the Complaint; conduct searches for some of those borrowers' current addresses; and then individually mail them checks or apply credits to their accounts. Dkt. Nos. 50 §§ III–IV, 51 §§ III, V. Accordingly, redress under the Stipulated Judgments is not automatic, but rather requires a detailed assessment of which borrowers, if any, might be eligible for redress, and if so, to what extent.

The Prospective and Injunctive Provisions also dictate governance changes, by requiring PHEAA's executives and board to review the compliance plans and reports, and the Trusts and PHEAA to establish a new joint committee with non-parties to oversee the redress process.  Dkt. Nos. 50 § IV, 51 §§ IV–V.  The CFPB has significant obligations too, as its Enforcement Director must review and make a determination of non-objection to Defendants' detailed redress plans.  Dkt. Nos. 50 §IV, 51 § V.

Additionally, the Prospective and Injunctive Provisions place 5-year records retention requirements on both PHEAA and the Trusts.  Dkt. Nos. 50 § IX, 51 § 10.  Likewise, both PHEAA and the Trusts are obligated to provide, upon request, compliance reporting to the CFPB.  Dkt. Nos. 50 § XII, 51 § XIII.  Finally, to the extent either PHEAA or the Trusts desire to assign any of their respective rights tethered to the private student loans impacted by the Stipulated Judgments, the parties are required to receive written assurances that the transferee(s) or assignee(s) would continue to comply with the Stipulated Judgments.  Dkt. Nos. 50 § XIII, 51 § XIV.

After entry of the Stipulated Judgments, the Trusts and PHEAA paid the civil money penalties in full.  In addition, as described in the Stipulated Judgments, prior to the filing of the CFPB's complaint, PHEAA and the Trusts amended the Servicing

Guidelines to facilitate the review of certain borrower requests.  Dkt. Nos. 50 ¶ 7, 51 ¶ 7.[3]

PIMCO appealed the Court's order entering the Stipulated Judgments to the Third Circuit on October 31, 2024.  Dkt. No. 52.  PHEAA moved for a partial stay of the Stipulated Judgment against it pending appeal.  Dkt. No. 54.  In granting that stay motion, this Court recognized the "possibility that appellant PIMCO will succeed on appeal."  Dkt. No. 60 at 7.

In late January 2025, the Third Circuit "referred [the case] to the Circuit mediator for possible settlement."  Case No. 24-3061, Dkt. No. 21 (3d Cir. Jan. 29, 2025).  Through the court-ordered mediation process, the parties reached a settlement of all issues in this case.  But the parties' settlement is conditioned on a ruling from this Court modifying the Stipulated Judgments[4] to narrow the Prospective and Injunctive Provisions, retaining only certain redress obligations relating to borrower requests for SCRA protections.  Thus, relieving the Trusts, PHEAA, and CFPB of their ongoing obligations under the Prospective and

---

[3] The modification of the Stipulated Judgments the parties seek in this motion would not affect the overall Servicing Agreement or the amendments thereto, which includes the changes made to the Servicing Guidelines with respect to the review of borrower requests.

[4] The parties seek to modify and combine both Stipulated Judgments because those judgments are "intertwined," as this Court recognized.  Dkt. No. 60 at 4.  If the Stipulated Judgment against the Trusts is modified, "the judgment entered against PHEAA will be affected and compliance with the letter of the judgment will be virtually impossible[.]" *Id.*

Injunctive Provisions, consistent with the parties' agreement, would allow the parties to effectuate their settlement agreement and bring this litigation to a close.

The parties filed a joint motion for partial remand in the Third Circuit, in order to allow the parties to seek modification of the Stipulated Judgments before this Court. On September 25, 2025, the Third Circuit granted the parties' motion and remanded so the parties could seek relief from this Court. Dkt. No. 68.

## STATEMENT OF QUESTION PRESENTED

Should the Court modify the existing Stipulated Judgments and enter the proposed Modified Stipulated Judgment agreed to by all parties?

**Suggested Answer**: Yes

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b)(5) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment . . . [when] applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). "The rule contemplates consideration by the trial court of the competing equities, of the strengths and weaknesses of the parties' positions, and of the imposition of conditions for relief from a judgment." *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 637 (3d Cir. 1982).

## ARGUMENT

The Prospective and Injunctive Provisions of the Stipulated Judgments are now the sole impediment to a complete resolution of this case. Through the court-ordered mediation process, the parties reached a fair compromise in light of PIMCO's appeal and the CFPB's enforcement priorities under the current presidential administration. For that settlement to come to fruition, the Prospective and Injunctive Provisions cannot be applied going forward, and must be narrowed as agreed upon among the parties. The Court should therefore exercise its equitable powers under Rule 60(b)(5) to modify the Stipulated Judgments accordingly.

The Third Circuit has held that it is appropriate to lift injunctive obligations that pose a barrier to settlement. *See Oracare DPO, Inc. v. Merin*, 972 F.2d 519, 522 (3d Cir. 1992) (explaining vacatur is appropriate where a court order and opinion are "*legal bars* to the settlement the parties have concluded" because "the case cannot as a legal matter be settled . . . so long as the district court's opinion and order remain undisturbed"); *see also Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 220 (3d Cir. 2003) ("We . . . have permitted [vacatur] when the trial court's injunctive order imposed a legal bar to settlement."). Removing those obligations is equitable since "voluntary settlements should be encouraged," and courts should not "force either of the parties to continue the litigation against its will." *Oracare DPO*, 972 F.2d at 522 (quotation marks omitted); *see also Scott v. Vantage Corp.*, 64 F.4th

462, 472 (3d Cir. 2023) ("[W]e have recognized a strong presumption in favor of voluntary settlements because they promote the amicable resolution of disputes, further the conservation of judicial resources, and help parties avoid the costs and risks of a lengthy and complex trial.") (internal quotation marks and alterations omitted).

Thus, district courts in this Circuit have used Rule 60(b) to relieve litigants from injunctions that are inconsistent with settlements that litigants have reached during the pendency of an appeal, and to modify an injunction to accord with such a settlement. In *Janssen Products, L.P. v. Lupin Ltd.*, for example, the parties executed a settlement agreement during an appeal and then sought "a limited modification" of the district court's injunction to effectuate their agreement under Rule 60(b)(5). 2015 WL 12868208, at *3 (D.N.J. Dec. 11, 2015). The court agreed modification was appropriate, explaining "it would be inequitable for the Court to refuse to modify a judgment preventing the parties from carrying out this settlement." *Id.*

The court reached the same conclusion in *Hospira, Inc. v. Sandoz Inc.*, 2014 WL 794589, at *5 (D.N.J. Feb. 27, 2014). Granting the parties' Rule 60(b) motion, the court observed that they "settled part of their dispute amicably before incurring further expense at the appellate level[,]" and that "[s]ettlements are—of course— highly favored." *Id.*

9

Likewise, when the parties "reached a settlement agreement [during an appeal], resolving all issues between them without need for further litigation" in *Eagle View Technologies, Inc. v. Xactware Solutions, Inc.*, the district court relieved the parties from an injunction that would have frustrated their agreement, 2021 WL 5239091, at *1 (D.N.J. Nov. 10, 2021): "Considering the parties' recent settlement, it is 'no longer equitable' to 'prospectively' apply the Court's Permanent Injunction against Defendants. The Court hereby vacates its Permanent Injunction."[5] *Id.* at *3 (internal citation omitted).

In doing so, the district court relied on the Third Circuit's decisions in *Sentinel Trust* and *Oracare* to distinguish between the vacatur of an injunction that posed a legal bar to settlement and the vacatur of judgments for money damages. *Id.* at *3. Vacatur of judgments that "impose a legal bar to settlement," the court explained, "is consistent with the prong in Fed. R. Civ. P. 60(b)(5) that allows the court to vacate a judgment when 'applying it prospectively is no longer equitable.'" *Id.* By contrast, the court observed that in *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), the Supreme Court had reasoned that appellate courts should not generally vacate civil judgments in cases that settle after an appeal is filed. *Id.*; *see also Sentinel Trust Co.*, 316 F.3d at 220. The Supreme Court

---

[5] The court also denied a separate request to vacate a jury verdict under Rule 60(b)(6), 2021 WL 5239091, at *3–4, but the parties do not seek any such relief here.

10

grounded that general principle in the public interest, since final judicial determinations are "valuable to the legal community as a whole." *U.S. Bancorp*, 513 U.S. at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)). Yet the district court in *Eagle View* recognized that while judicial "decisions" implicate that public interest, mere injunctions do not. 2021 WL 5239091, at *3.

So too here: because the requested modifications would affect only the Stipulated Judgments, granting that relief would not have any impact on the Court's memorandum opinion in this case. By contrast, the Stipulated Judgments "carry no precedential weight." *United States v. Lane Labs-USA, Inc.*, 324 F. Supp. 2d 547, 578 n.17 (D.N.J. 2004), *aff'd*, 427 F.3d 219 (3d Cir. 2005); *see United States v. L&M 93rd St. LLC*, 2011 WL 1346994, at *3 (S.D.N.Y. Apr. 5, 2011) ("[A] consent decree is 'not a ruling on the merits . . . that . . . becomes precedent applicable to any other proceedings.'" (quoting *Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995))). As a result, narrowing the Prospective and Injunctive Provisions would not impair the development of the law. *Cf. C & H Sugar Co. v. Solstice Indus., Inc.*, 2007 WL 2870991, at *1 (E.D. Mich. Sept. 27, 2007) (granting vacatur where "the subject order is unpublished, and lacks precedential value"); *LoanCare, LLC v. Ragusa*, 2021 WL 1318024, at *2 (E.D.N.Y. Apr. 8, 2021) (same where "decisional law [was] hardly advanced" by the judgment).

Like the district courts in *Janssen*, *Hospira*, and *Eagle View*, courts across the country have similarly granted relief under Rule 60(b)(5) to effectuate settlements reached during the pendency of an appeal. *See, e.g.*, *Yang v. ActioNet, Inc.*, 2017 WL 11916490, at *1 (C.D. Cal. June 29, 2017) ("Rule 60(b) may be utilized to seek vacatur of a judgment when parties to a dispute have reached a settlement, and thus it would be inequitable for the judgment to remain in effect."); *Johnson v. Specialized Loan Servicing, LLC*, 2019 WL 8437149, at *2-3 (M.D. Fla. Sept. 25, 2019) ("weighing the equities" and granting Rule 60(b)(5) relief where the parties reached a settlement on appeal); *Strobel v. Rusch*, 2021 WL 12313365, at *2 (D.N.M. May 17, 2021) (in light of settlement, "and in recognition of limited judicial resources, the Court finds that the 'factual conditions' have changed such that vacating the sanctions award is proper under Rule 60(b)(5)"); *see also Doe v. U.S. Dep't of Lab.*, 2007 WL 1321116, at *1 (D.D.C. Mar. 22, 2007) ("[B]ecause [the parties] have reached an amicable settlement, the Court concludes that it is no longer equitable that its . . . judgment should have prospective application.").

The equitable principles that warranted Rule 60(b) relief in those cases compel the same result here: Relief from the Prospective and Injunctive Provisions is an essential condition of the parties' settlement agreement. Resolving this case through a mutually agreeable compromise is both fair and efficient; forcing the parties to litigate against their will is neither. Accordingly, the equities strongly favor

12

modifying the Stipulated Judgments to narrow the Prospective and Injunctive Provisions consistent with the parties' agreement.

Rule 60(b) relief is particularly appropriate where, as here, the parties reached a settlement through a court-ordered mediation process. *See Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331, 1336 (11th Cir. 2016); *Carson City v. Travelers Indem. Co.*, 2024 WL 385158, at *2 (D. Nev. Feb. 1, 2024). Otherwise, if litigants were unable to have their settlements effectuated in district court, appellate mediation programs would become an idle formality. That result would contravene both the Third Circuit's order directing the parties to mediate here to pursue "a possible settlement," Case No. 24-3061, Dkt. No. 21, and Federal Rule of Appellate Procedure 33, which provides that mediation can "address any matter that may aid in disposing of the proceedings, including . . . *discussing settlement*," Fed. R. App. P. 33 (emphasis added).

The parties' settlement is a fair compromise that balances the CFPB's success in this Court with the possibility that the Third Circuit might reverse the order entering the Trusts' Stipulated Judgment. As this Court explained, the motion to enter the Stipulated Judgments "involves a complex set of issues, authorized a large monetary payment, and detailed an intricate compliance scheme." Dkt. No. 60 at 7. Consequently, "[t]he Third Circuit may certainly disagree with this court in some way that will affect the judgment," so there is a "possibility that the appellant

PIMCO will succeed on appeal." *Id.* If PIMCO prevails in the Third Circuit, the CFPB will not receive anything under the Trusts' Stipulated Judgment. By contrast, the parties' settlement ensures that the CFPB will keep the civil money penalties previously paid by the Trusts and PHEAA, and borrowers will keep a portion of redress relating to borrower requests for SCRA protections. In exchange, the Trusts and PHEAA will retain their releases. And all noteholders, including the PIMCO-Managed Funds, will benefit from the Trusts' reduced compliance and redress costs.

Additionally, the CFPB believes the parties' settlement comports with the enforcement priorities of the CFPB's new leadership. The CFPB is an executive agency "dependent on the President, who in turn is accountable to the people." *Seila L. LLC v. CFPB*, 591 U.S. 197, 238 (2020). To preserve that "chain of dependence," *id.* at 224 (quoting 1 Annals of Cong. 499 (J. Madison)), the President must be able to "bring the agency in line with the President's preferred policies[,]" with respect to the CFPB's "enforcement priorities" and "what penalties to impose on private parties[,]" *id.* at 225. Based on the leadership and policy priorities of the new administration, the CFPB has concluded that the settlement reached by the parties through the court-ordered mediation process is preferable to leaving the Stipulated Judgments wholly intact and litigating an appeal before the Third Circuit. And by ensuring that the redress process for affected servicemembers with requests for SCRA protections is completed, the settlement aligns with the CFPB's enforcement

priorities, which include focusing on redress for servicemembers and veterans. That policy determination deserves deference from this Court. *See Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985) ("The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.").

Finally, modifying the Stipulated Judgments would achieve an optimal use of judicial resources. The federal judiciary would be able to turn its attention to other cases and appeals once this litigation is permanently resolved through the parties' settlement, without impacting the development of the law. *See Hartford Cas. Ins.*, 828 F.3d at 1337 ("[T]he public interest is not served only by the preservation of precedent. Rather, the public interest is also served by settlements when previously committed judicial resources are made available to deal with other matters, advancing the efficiency of the federal courts."); *Phillips v. J.P. Morgan Chase Bank, N.A.*, 2020 WL 8052919, at *1 (W.D. Tex. Aug. 15, 2020) ("[T]he parties have justified relief under Rule 60(b) to effectuate the parties' settlement agreement and increase efficiencies for the judiciary[.]").

## CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court modify the Stipulated Judgments to modify the Prospective and Injunctive Provisions as outlined in the Proposed Modified Stipulated Judgment filed together with this motion.

Dated: December 2, 2025

Respectfully submitted,

Mark Paoletta
*Chief Legal Officer*
Victoria Dorfman
*Senior Legal Advisor*
Christopher Deal
*Deputy General Counsel*

/s/ *Adrienne Warrell*
Adrienne Warrell
Tel.: (202) 435-7189
Adrienne.warrell@cfpb.gov

**CONSUMER FINANCIAL PROTECTION BUREAU**
1700 G Street NW
Washington, DC 20552
Facsimile: 202-435-7722

*Attorneys for Plaintiff
Consumer Financial Protection Bureau*

/s/ *Rachel Rodman*
Rachel Rodman (DC 493445)
(admitted *pro hac vice*)
**WHITE & CASE**
701 13th Street NW
Washington, DC 20005
Tel.: (202) 637-6281
rachel.rodman@whitecase.com

Steven E. Bizar (PA 68316)
Michael H. McGinley (PA 325545)
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA
Tel.: 215-994-4000
steven.bizar@dechert.com
michael.mcginley@dechert.com

*Attorneys for Pacific Investment Management Co LLC*

/s/ *Justin G. Weber*
Justin G. Weber (PA 89266)
**TROUTMAN PEPPER LOCKE**
100 Market Street, P.O. Box 1181
Suite 200
Harrisburg, PA 17108
Tel.: (717) 255-1170
justin.weber@troutman.com

*Attorneys for Defendant Pennsylvania Higher Education Assistance Agency*

/s/  *Scott D. Clements*
Scott D. Clements, Esquire (PA 78529)
**DICKIE, MCCAMEY &
  CHILCOTE, P.C.**
Four Gateway Center
444 Liberty Ave., Suite 1000
Pittsburgh, PA  15222
Tel.: (412) 281-7272
sclements@dmclaw.com

John C. Wells (DC 491292)
(admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE &
  DORR**
2100 Pennsylvania Ave NW
Washington, DC  20037
Tel.: (202) 663-6352
john.wells@wilmerhale.com

Thomas M. Oates (NY 5631817)
(admitted *pro hac vice*)
**WILMER CUTLER PICKERING HALE &
  DORR**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 295-6543
tom.oates@wilmerhale.com

*Attorneys for Defendants National Collegiate Student Loan Trusts*