# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CONSUMER FINANCIAL PROTECTION
BUREAU,

v.

PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY, et al.,

Case No. 1:24-cv-00756-JPW

## Appendix of Unreported Cases

*C & H Sugar Co. v. Solstice Indus., Inc.*, 2007 WL 2870991 (E.D. Mich. Sept. 27, 2007)

*Carson City v. Travelers Indem. Co.*, 2024 WL 385158 (D. Nev. Feb. 1, 2024)

*Doe v. U.S. Dep't of Lab.*, 2007 WL 1321116 (D.D.C. Mar. 22, 2007)

*Eagle View Technologies, Inc. v. Xactware Solutions, Inc.*, 2021 WL 5239091 (D.N.J. Nov. 10, 2021)

*Hospira, Inc. v. Sandoz Inc.*, 2014 WL 794589 (D.N.J. Feb. 27, 2014)

*Janssen Products, L.P. v. Lupin Ltd.*, 2015 WL 12868208 (D.N.J. Dec. 11, 2015)

*Johnson v. Specialized Loan Servicing, LLC*, 2019 WL 8437149 (M.D. Fla. Sept. 25, 2019)

*LoanCare, LLC v. Ragusa*, 2021 WL 1318024 (E.D.N.Y. Apr. 8, 2021)

*Phillips v. J.P. Morgan Chase Bank, N.A.*, 2020 WL 8052919 (W.D. Tex. Aug. 15, 2020)

*Strobel v. Rusch*, 2021 WL 12313365 (D.N.M. May 17, 2021)

*United States v. L&M 93rd St. LLC*, 2011 WL 1346994 (S.D.N.Y. Apr. 5, 2011)

*Yang v. ActioNet, Inc.*, 2017 WL 11916490 (C.D. Cal. June 29, 2017)

2007 WL 2870991
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

C & H SUGAR COMPANY, INC., Plaintiff,

v.

SOLSTICE INDUSTRIES, INC., Defendant,
and
JPMorgan Chase Bank, N.A., Garnishee Defendant.

No. 05-CV-74265.
|
Sept. 27, 2007.

**Attorneys and Law Firms**

Robert K. Siegel, Jacob & Weingarten, Troy, MI, for Plaintiff.

Steven F. Alexsy, Seyburn, Kahn, Southfield, MI, for Defendant.

Nectar Transport, Inc., c/o Paul Saam, Ann Arbor, MI, pro se.

*ORDER GRANTING JOINT MOTION (# 68)
TO VACATE THE COURT'S AUGUST 14,
2006 ORDER (# 50) AND JUDGMENT (# 51)*

GEORGE CARAM STEEH, United States District Judge.

**\*1** Garnishee defendant JPMorgan Chase Bank, N.A. and plaintiff C & H Sugar Company, Inc., move jointly under Rule 60(b) to vacate this court's August 14, 2006 Judgment and corresponding order, *C & H Sugar Comp., Inc. v. Solstice Industries, Inc.,* No. 05-CV-74265, 2006 WL 2367388 (E.D.Mich. Aug.14, 2006) (unpublished), finding JPMorgan waived its right under Michigan law to a setoff pursuant to its post-garnishment conduct, and granting summary judgment in favor of C & H Sugar on its claim of a priority interest in a Solstice Industries, Inc. bank account. Solstice Industries has not filed a timely opposition to the joint motion.

Federal Rule of Civil Procedure 60(b)(5) authorizes the court to relieve a party from a final judgement or order if it is no longer equitable that the judgment should have prospective application. While this matter was on appeal to the Sixth Circuit, all of the parties reached a settlement. At the request of the parties, this court entered a stipulated order on July 16, 2007 stating the court was willing to consider a motion to vacate if the matter was remanded to district court. The Sixth Circuit remanded on August 6, 2007, and the parties filed the instant motion on August 30, 2007.

A district court is empowered to vacate an order or judgment that is under appellate review where exceptional circumstances justify such equitable relief. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); *Motta v. Dist. Dir. INS,* 61 F.3d 117, 118-19 (1st Cir.1995). Settlement of the case alone while pending appellate review is not enough to justify equitable relief due to the independent social value of preserving judicial precedent. *U.S. Bancorp,* 513 U.S. at 29. Here, the subject order is unpublished, and lacks precedential value. The dispositive issue was solely a matter of state law, and would not be binding on Michigan courts even if published. Still further, the reasoning of the court drew its primary genesis from the published opinion of Eastern District of Michigan District Judge John Feikens, *Michigan Carpenters' Council Pension Fund v. Smith & Andrews Construction Co.,* 681 F.Supp. 1252 (E.D.Mich.1988). The social value of preserving judicial precedent will not be impacted if the joint motion is granted. Other equitable factors, including the resolution of involved bankruptcy issues, weigh in favor of granting relief. Accordingly,

JPMorgan's and C & H Sugar's joint motion to vacate is hereby GRANTED. It is hereby ORDERED that the court's August 14, 2004 Opinion and Order, *C & H Sugar Comp., Inc. v. Solstice Industries, Inc.,* No. 05-CV-74265, 2006 WL 2367388 (E.D.Mich. Aug.14, 2006) (unpublished), and corresponding Judgment are hereby VACATED.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2870991

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.   1

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 3 of 30

Carson City v. Travelers Indemnity Company, Not Reported in Fed. Supp. (2024)

2024 WL 385158

2024 WL 385158
Only the Westlaw citation is currently available.
United States District Court, D. Nevada.

CARSON CITY, a consolidated municipality and
political subdivision of the State of Nevada, Plaintiff,

v.

The TRAVELERS INDEMNITY COMPANY,
a Connecticut Corporation; Roe Companies I
– X; and Doe Individuals I – X, Defendants.

Case No. 3:22-cv-00006-LRH-CLB
|
Filed February 1, 2024

**Attorneys and Law Firms**

Douglas R. Brown, Dane Andrew Littlefield, Lemons,
Grundy & Eisenberg, Reno, NV, for Plaintiff.

Julia Beckley, Dentons US LLP, Dallas, TX, Matthew Keith
Moskowitz, Chicago, IL, Nathan Paul Shimodoi, Dentons
US LLP, Honolulu, HI, Timothy F. Hunter, Ray Lego &
Associates, Las Vegas, NV, for Defendant.


ORDER

LARRY R. HICKS, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is Plaintiff Carson City ("Carson
City") and Defendant The Travelers Indemnity Company's
("Travelers") joint motion to vacate (1) the Court's order
on summary judgment and (2) final judgment (the "Joint
Motion"). ECF No. 41. The Joint Motion was filed as
a result of the parties' participation in the Ninth Circuit
Mediation Program where they came to a tentative settlement
conditioned on vacatur of the Court's rulings. *Id.* at 5. For the
reasons articulated below, the Court grants the Joint Motion.

This matter involves a contractual dispute concerning the
monetary coverage limits of a Travelers liability insurance
policy (the "Policy") which Carson City purchased and was
insured under from July 1, 2015, through July 1, 2017. *See*
ECF Nos. 28-2, 28-3, 28-4. At issue here are the applicable
monetary limits of two coverage-types under the Policy and
whether those limits can "stack" upon each other to increase
Carson City's total coverage. The first disputed coverage-
type is "Coverage A" of the Commercial General Liability

Coverage Form (the "CGL") which provides that Travelers
"will pay those sums that [Carson City] becomes legally
obligated to pay as damages because of 'bodily injury'
or 'property damage' ... caused by an 'occurrence[.]' "
ECF No. 28-2 at 51, 62, 64. Coverage A is subject to
a $1,000,000 per "occurrence" limit and a general aggregate
limit of $2,000,000. *Id.* at 40. The second disputed coverage-
type is a Limited Abuse or Molestation Liability Coverage
endorsement (the "LAM") that amends and modifies the
CGL. *Id.* at 71. The LAM excludes " '[b]odily injury' arising
out of any act of 'abuse or molestation' " from the CGL's
Coverage A and adds additional coverage to the Policy by
providing insurance for "bodily injury" caused by an "abuse
or molestation offense" during the policy period, subject to
certain exclusions and limitations, including an Each Abuse
or Molestation Offense Limit of $1,000,000 per "offense"
with a $2,000,000 aggregate limit. *Id.* at 71.

In 2018, four minors filed two separate lawsuits against
Carson City alleging that they were molested by a fifteen-
year-old volunteer camp counselor at Camp Carson in the
summer of 2016. ECF No. 1-2 at 20, 22. Soon after, Carson
City also received a demand letter from a fifth minor who
alleged similar abuse. *Id.* at 22. Carson City settled the
lawsuits and demand letter for a total of $1,630,000. *Id.* at
24–28. Travelers paid $1,000,000 toward the settlements,
the amount it contends is available to Carson City under
the Policy. *Id.* at 24. Carson City contends that the Policy
requires at least $2,000,000 in coverage because of the limits
applicable to Coverage A and the LAM. *Id.*

On November 17, 2021, Carson City filed a Complaint
against Travelers in the First Judicial District Court for the
State of Nevada in and for Carson City for breach of contract
and breach of the implied covenant of good faith and fair
dealing. *See generally* ECF No. 1-2. Specifically, Carson City
alleges that Travelers breached the Policy when it failed to
provide $2,000,000 in coverage to settle the pertinent abuse
claims and demand letter. ECF No. 1-2 at 32. On January
1, 2022, Travelers removed the matter based on diversity
of citizenship under 28 U.S.C. §§ 1332, 1441, and 1446.
ECF No. 1 at 1. At the close of discovery, Carson City and
Travelers filed cross motions for summary judgment. ECF
Nos. 28, 29. The Court granted Carson City's motion as to
breach of contract, denied Carson City's motion as to breach
of the implied covenant of good faith and fair dealing, and
denied Travelers' motion in its entirety. ECF No. 34 at 12.
In its order, the Court found that the Policy was ambiguous
with respect to whether Coverage A and the LAM coverage

Carson City v. Travelers Indemnity Company, Not Reported in Fed. Supp. (2024)

2024 WL 385158

could to "stack," meaning each coverage-type's $1,000,000 limit could be combined for total coverage of $2,000,000. ECF No. 34 at 11. Because the Court found ambiguity, it interpreted the Policy in favor of Carson City as the insured. *Id.* Final judgment was entered accordingly on April 19, 2023 (ECF No. 35) and Travelers appealed (ECF No. 37). Before briefing the matter on appeal, the parties went through the Ninth Circuit Mediation Program where they agreed to settle the case on the condition that the Court vacate its summary judgment order and final judgment. ECF No. 41 at 5. On January 5, 2024, the parties filed the Joint Motion which reflects their vacatur-conditioned settlement. *See generally* ECF No. 41.

**\*2** Under Federal Rule of Civil Procedure 60(b), a district court on motion may relieve a party or its legal representative from a final judgment or order if the judgment has been satisfied or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5), (6). In the Ninth Circuit, Fed. R. Civ. P 60 "provides the basis for a district courts' vacation of judgments when the equities so demand[.]" *Am. Games, Inc. v. Trade Prod., Inc.*, 142 F.3d 1164, 1168 (9th Cir. 1998). Under this rule, a district court may vacate a judgment as a condition of settlement. *Id.* at 1168–170. However, vacatur is not automatic just because a settlement agreement provides for it. *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994).

When faced with vacatur as a condition to settlement on remand, a district court must "decide whether to vacate its judgment in light of 'the consequences and attendant hardships of dismissal or refusal to dismiss' and 'the competing values of finality of judgment and right to relitigation of unreviewed disputes.'" *Dilley v. Gunn*, 64 F.3d 1365, 1371 (9th Cir. 1995) (citing and quoting *Ringsby Truck Lines, Inc. v. W. Conf. of Teamsters*, 686 F.2d 720, 722 (9th Cir. 1982)). Put alternatively, "the district court should balance the competing interests of the parties in order to determine whether the judgment ... should be vacated." *Allard v. De Lorean*, 884 F.2d 464, 467 (9th Cir. 1989). Ultimately, the district court has "equitable discretion when reviewing its own judgments," and must "weigh the equities and determine whether it should vacate its own judgment." *Am. Games*, 142 F.3d at 1170. The Ninth Circuit has stated that "Rule 60(b) (6) should be liberally applied ... to accomplish justice[.]" *In Re International Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007) (citations and quotations omitted).

After performing a fact-intensive analysis and weighing the equities, the Court finds that vacatur is appropriate here. First, adverse consequences and attendant hardships are not likely to result from vacating the Court's summary judgment order and final judgment. When determining consequences and hardships in this context, district courts in the Ninth Circuit often consider the monetary costs and the expenditure of time parties will bear in association with continued litigation as well as the conservation of judicial resources. *See e.g.*, *Hebrew Univ. of Jerusalem v. Gen. Motors LLC*, Case No. CV-10-3790-AB (JCX), 2015 WL 9653154, at \*2 (C.D. Cal. Jan. 12, 2015). Were the Court to refuse vacatur here, it would burden the parties financially with unknown appeal costs and require the parties to commit more time litigating a matter that stems from prior litigation that first appeared before the Court nearly six years ago.[1] On the other hand, granting vacatur would alleviate any judicially incurred financial and time-related hardships while simultaneously conserving judicial resources. Conservation of judicial resources is a valuable consideration in balancing the equities because it advances the Ninth Circuit's position that settlement agreements are "judicially favored" as a matter of public policy as they "conserve judicial time[.]" *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979). Second, the Court does not foresee, and the parties do not offer, any concerns as to the competing values of finality of judgment and right to relitigation of unreviewed disputes. The parties represent to the Court that their conditional settlement will resolve all legal disputes between them and address the abuse claims and demand letter. ECF No. 41 at 10. Such representation leaves little room for concern that Travelers or Carson City is attempting to avoid an adverse decision in final judgment. Moreover, the parties have stated that their settlement is the product of good faith under the Ninth Circuit Mediation Program. *Id.* Finally, Travelers and Carson City share a mutual interest in vacatur because it allows them to finalize their settlement agreement without judicial interference.

[1] The underlying abuse and molestation suits filed against Carson City by the four minors first appeared in front of the Court in 2018. *See Doe v. Carson City*, Case No. 3-18-CV-00428-LRH-WGC, 2019 WL 1292682, at \*1 (D. Nev. Mar. 20, 2019) (determining that good cause appeared to reassign Case No. 3:18-cv-00538-HDM-WGC to United States District Judge Larry R. Hicks pursuant to Local Rule 42-1 because it was related to Case No. 3:18-cv-00428-LRH-WGC,

2024 WL 385158

promoted judicial efficiency, and did not prejudice the parties).

**\*3** For these reasons, the Court finds that the present circumstances and balance of equities favor vacating the Court's order on summary judgment (ECF No. 34) and final judgment (ECF No. 35). Vacatur will facilitate an equitable and fair resolution of this matter and satisfy the conditions of the parties' settlement. *See Atain Specialty Ins. Co. v. Reno Cab Co., Inc.,* Case No. 3-15-CV-00406-MMD-CBC, 2019 WL 320825, *at 3, 4 (D. Nev. Jan. 23, 2019)* (granting the parties' stipulated motion to vacate the district court's order on cross motions for summary judgment as a condition to successful settlement for similar reasons).

IT IS THEREFORE ORDERED that Carson City and Travelers' joint motion to vacate (1) the Court's order on summary judgment and (2) final judgment (ECF No. 41) is **GRANTED**.

IT IS FURTHER ORDERED that the Court's order on summary judgment entered in favor of Carson City on April 19, 2023 (ECF No. 34) is **VACATED**, as is the subsequent final judgment that was issued the same day (ECF No. 35).

IT IS FURTHER ORDERED that the order regarding bill of costs or costs taxed (ECF No. 39) which was filed after the Court's order on summary judgment and final judgment is **VACATED** and has no preclusive effect.

IT IS FURTHER ORDERED that Travelers and Carson City shall file a stipulation settling and dismissing this matter upon finalization of their settlement agreement within 30 days.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 385158

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 1321116
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

John DOE, Plaintiff,
v.
U.S. DEPARTMENT OF LABOR, et al., Defendants.

No. Civ.A. 05-2449(RBW).
|
March 22, 2007.

**Attorneys and Law Firms**

J. Michael Hannon, Hannon Law Group, LLP, Washington, DC, for Plaintiff.

Marcia Berman, U.S. Department of Justice, Washington, DC, for Defendants.

ORDER

WALTON, J.

**\*1** Currently before the Court is the parties' Joint Motion to Vacate the Court's Order and Memorandum Opinion of September 6, 2006 ("Motion"). The parties represent that they have reached a settlement agreement which amicably resolves all claims in this case. Motion ¶ 5. The terms of this settlement agreement are contingent upon the Court granting the parties' request pursuant to Federal Rule of Civil Procedure 60(b) to vacate its September 6, 2006 order and opinion which granted in part and denied in part the defendant's motion to dismiss or for summary judgment. *Id.* ¶ 6; *see Doe v. Dep't of Labor, 451 F.Supp.2d 156 (D.D.C.2006).* In accordance with the oral orders issued at the status conference held on March 22, 2007, and in light of the parties' joint request that the opinion and order be vacated because they have reached an amicable settlement, the Court concludes that it is no longer equitable that its September 6, 2006 judgment should have prospective application. Fed.R.Civ.P. 60(b)(5). For this reason, it is hereby

ORDERED that the Court's September 6, 2006 Memorandum Opinion and Order are hereby vacated at the joint request of the parties in accordance with the terms of their settlement agreement. It is further

ORDERED that this case is closed.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1321116

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 5239091
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey,
Camden Vicinage.

EAGLE VIEW TECHNOLOGIES, INC.,
and Pictometry International Corp., Plaintiffs,

v.

XACTWARE SOLUTIONS, INC.,
and Verisk Analytics, Inc., Defendants.

Civil No. 15-7025 (RMB/SAK)
|
Signed 11/10/2021

**Attorneys and Law Firms**

Liza M. Walsh, Eleonore Ofosu-Antwi, Hector Daniel Ruiz, Walsh Pizzi O'Reilly Falanga LLP, Newark, NJ, for Plaintiffs.

Jeffrey A. Cohen, Flaster Greenberg, PC, Cherry Hill, NJ, Krishna Anarkali Jani, Flaster/Greenberg P.C., Philadelphia, PA, Scott S. Christie, Matthew Adam Sklar, Mccarter & English, LLP, Newark, NJ, for Defendants.

[Docket No. 987]

**OPINION**

RENÉE MARIE BUMB, United States District Judge

**\*1** This matter comes before the Court upon the parties' jointly proposed Stipulation and Order Vacating Judgment and Permanent Injunction Previously Issued by the Court in this Matter and Dismissing All Claims and Counterclaims With Prejudice. [Docket No. 987.] The Court construes the parties' joint submission as a proposed motion and references it as such herein. For the reasons set forth below, the Court **grants**, in part, and **denies**, in part, the proposed motion.

**I. BACKGROUND**

Plaintiffs Eagle View Technologies, Inc. and Pictometry International Corp. (collectively, "Eagle View" or "Plaintiffs") define their business as a data analytics company, with the "data" being derived from aerial imagery of roofs. [Trial Transcript, p. 705:24-706:1 ("A: ... Eagle View is in the business of capturing aerial imagery and then extracting roof measurements from the imagery.")).] Eagle View's patented processes are applied to that data, and then a roof report is generated. This is Eagle View's "cornerstone product." [Daga Sept. 26, 2019 Decl. ¶ 4.] In contrast to Eagle View, less than half of one percent of revenue of Defendants Xactware Solutions, Inc. and Verisk Analytics, Inc. ("Defendants") results from the generation of roof reports. [PTX-138; PTX-940; Dkt. No. 791-1, Exs. B–E.] In fact, it is Defendants' generation of their roof reports from Defendants' software programs that a jury ultimately found to infringe on Eagle View's patents.

On September 26, 2019, after years of litigation and a two-week jury trial, the jury found that Defendants willfully infringed six of Eagle View's patents and awarded lost profits damages of $125 million to Eagle View. That same day, this Court entered its Judgment (in favor of Eagle View and reflecting the Jury Verdict) [Docket No. 799], and issued a Temporary Restraining Order, enjoining Defendants from, among other things, selling or offering to sell their Property Insight, Roof Insight, Geomni Roof and Geomni Property products that are produced by the computer software programs the jury found infringed Eagle View's patents [Docket No. 800]. Shortly thereafter, Eagle View filed a Motion for a Permanent Injunction, which the Court granted, in part, on October 18, 2019. [Docket No. 842.]

Defendants disputed the Jury Verdict and this Court's resulting findings, and filed Notices of Appeal to the Federal Circuit Court of Appeals with respect to this Court's (i) Judgment [Docket No 843], (ii) denial of Defendants' Motion for New Trial/Judgment as a Matter of Law [Docket No. 903], and (iii) Order on Motion for Miscellaneous Relief [Docket No. 911]. While the appeal was pending, Eagle View filed a Motion for an Order to Initiate Contempt Proceedings and for a Temporary Restraining Order [Docket No. 940], and after conducting a hearing on the proposed motion, this Court determined that Eagle View had made a *prima facie* showing of contempt and allowed the parties to proceed with expedited discovery [Docket No. 967].

On November 5, 2021, with the appeal still pending, the parties notified the Court that they had reached a settlement agreement, resolving all issues between them without the need for further litigation. [Docket No. 987.] The parties' recent settlement is the basis for the parties' current motion before this Court.

**II. JURISDICTION**

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 8 of 30

Eagle View Technologies, Inc. v. Xactware Solutions, Inc., Not Reported in Fed. Supp....

2021 WL 5239091

**\*2**  Pursuant to Fed. R. App. P. 42(b), the parties sought joint dismissal of the appeal with each party to bear its own costs, which the Federal Circuit Court of Appeals granted on November 9, 2021. [Docket No. 988.]

## III. ANALYSIS

Now that the Federal Circuit has dismissed the appeal, three motions remain pending before this Court: (i) the parties' current motion; (ii) Eagle View's Motion to Initiate Contempt Proceedings, which the Court continued, in part, pending expedited discovery; and (iii) Eagle View's Motion for Attorneys' Fees, Costs, and Interest, which the Court continued, in part, pending adjudication of the appeal by the Federal Circuit. In the current motion, the parties jointly request not only that the Court dismiss the remaining motions pending before it, but also that the Court vacate its earlier findings. Specifically, pursuant to Fed. R. Civ. P. 60(b)(5) and (6), the parties contend in their current motion that the Court has the inherent authority to do each of the following:

1. Vacate the Court's Judgment [Docket No. 799] entered on September 26, 2019, and all Orders, decisions, and findings underlying such judgment or merged therein;

2. Vacate the Court's Permanent Injunction [Docket No. 842] entered on October 19, 2019, and all Orders, decisions, and findings underlying such judgment or merged therein;

3. Dismiss, with prejudice, all claims, counterclaims, and defenses in this matter, including the allegations and averments contained therein; and

4. Terminate the contempt proceedings initiated by Eagle View.

[Docket No. 987 at 3.] The Court considers each of the requests made by the parties in their current motion in turn.

### A. Eagle View's Remaining Motions to Initiate Contempt Proceedings and for Attorneys' Fees, Costs, and Interest

The Court agrees with the parties that it has the inherent authority to terminate the contempt proceedings initiated by Eagle View. Fed. R. Civ. P. 60(b)(5) ("On motion and just terms, the court may relieve a party or its legal representative from a ... **proceeding** ... [when] applying it prospectively is no longer equitable[.]" (emphasis added)). Undoubtedly, the Court also has the inherent authority to

enforce its prior Orders, including its Permanent Injunction Order. Here, however, the Court finds that the parties' recent settlement obviates the need for further proceedings regarding Defendants' alleged contempt, as stipulated by Eagle View in the current motion. Thus, pursuant to Fed. R. Civ. P. 60(b) (5), Eagle View's Motion to Initiate Contempt Proceedings is hereby dismissed and the contempt proceedings initiated thereby are terminated.

Unlike Eagle View's Motion to Initiate Contempt Proceedings, nowhere in the current motion do the parties address Eagle View's Motion for Attorneys' Fees, Costs, and Interest. However, the Court finds that the parties' recent settlement also necessarily resolves the dispute insofar as it concerns such motion, and the motion is hereby dismissed as moot.

### B. The Parties' Underlying Claims, Counterclaims, and Defenses

The Court agrees with the parties that given the recent settlement, the parties' underlying claims, counterclaims, and defenses in this matter, including the allegations and averments contained therein, are rendered moot. [Docket No. 987 at 2 (citing *U.S. Phillips Corp. v. Windmere Corp.*, 9741 F.2d 728, 731 (Fed. Cir. 1992) (considering a settlement between two parties that occurred pending appeal and explaining that "[a]ll of the claims of the judgments were appealed, and have now become entirely moot")).] Thus, the Court dismisses, without prejudice, each of the parties' underlying claims, counterclaims, and defenses in the current dispute.

### C. The Court's Permanent Injunction

**\*3**  The Court finds that there is a legally sufficient basis for the vacatur of its Permanent Injunction entered on October 19, 2019. Considering the parties' recent settlement, it is "no longer equitable" to "prospectively" apply the Court's Permanent Injunction against Defendants. Fed. R. Civ. P. 60(b)(5). The Court hereby vacates its Permanent Injunction. However, the parties' joint request to vacate "all Orders, decisions, and findings underlying such judgment or merged therein" as they pertain to the Court's Permanent Injunction is hereby denied and will be discussed below in connection with the identical request made regarding the Orders, decisions, and findings underlying the Court's Judgment.

### D. The Court's Judgment

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 9 of 30

Eagle View Technologies, Inc. v. Xactware Solutions, Inc., Not Reported in Fed. Supp....

2021 WL 5239091

In *Argentum Medical, LLC v. Noble Biomaterials*, the district court considered a nearly identical case. Civ. No. 3:08-1305, 2014 WL 4351531 (M.D. Pa. Sept. 2, 2014). After a jury found in favor of the plaintiff on its Lathan Act claims and the trial court denied the defendants' motion for judgment as a matter of law, the defendants appealed to the Federal Circuit. *Id.* at *1. While the appeal was pending, the parties "fully and amicably resolved all outstanding disputes and claims," and requested that the district court vacate "the portion of the judgment that imposed punitive damages against them." *Id.* In denying the parties' request to vacate its prior judgment, the district court relied on the "principles emanating" from earlier decisions by the Supreme Court and the Third Circuit Court of Appeals, which provide a roadmap for the current request before this Court regarding its prior Judgment.

As noted by the district court in *Argentum Medical*, the Supreme Court has expressly considered the question as to " 'whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought" and provided an answer "in a unanimous opinion, [that] might fairly be stated as generally no." *Id.* at *2 (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 19 (1994)). In addition, the Third Circuit has clearly "voiced [its] opposition to settlements conditioned on nullification of judgments for money damages," but does "permi[t] the practice when the trial court's injunctive order imposed a legal bar to settlement." *Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 220 (3d Cir. 2003) (citing *Clarendon Ltd. v. Nu-W. Indus., Inc.*, 936 F.2d 127 (3d Cir. 1991)) ("While we share the view that voluntary settlements should be encouraged, we cannot agree that such a goal overrides the policy that a losing party with a deep pocket should not be permitted to use a settlement to have an adverse precedent vacated."); *Oracare DPO, Inc. v. Merin*, 972 F.2d 519, 522 (3d Cir. 1992). "[E]xceptional circumstances must exist to justify vacatur of a judgment pursuant to Rule 60(b)(6)," including that none of Rules 60(b)(1) through (5) apply, but which "do not include the mere fact that the settlement agreement provides for vacatur." *Clarke v. Castro*, Civ. No. 10 Civ. 6330(HBP), 2013 WL 686680, at *2 (S.D.N.Y. Feb. 26, 2013) (citations omitted).

The Court is not persuaded that exceptional circumstances exist in the current controversy, nor do the parties press anywhere in their current motion what circumstances warrant vacatur under Rule 60(b)(6). The Court is persuaded by the distinction drawn by the Third Circuit in *Sentinel Trust* –

*i.e.*, between judgments that impose a legal bar to settlement and those that do not – and finds that such distinction is consistent with the prong in Fed. R. Civ. P. 60(b)(5) that allows the Court to vacate a judgment when "applying it prospectively is no longer equitable." For example, the continued enforcement of the Court's Permanent Injunction against Defendants is incompatible with the parties' agreed-to settlement, as previously discussed; however, the Court's Judgment imposes no such barrier.

**\*4** The Court is also persuaded by the principles relied on by the district court in *Argentum Medical* that warrant denial of the parties' request to vacate the Judgment. The public interest is best served by the finality of judgments. "While a jury verdict alone has little or no precedential value, the integrity of all decisions in this court would be weakened by allowing unsuccessful parties to erase unfavorable legal outcomes by striking a deal with the other side after the fact." *Argentum Medical*, 2014 WL at *3. Moreover, vacatur of the Court's Judgment "would trivialize the significant judicial resources dedicated to this litigation, including the services rendered by the ... members of the jury that considered this case." *Id.* Simply put, a jury verdict is no fiction that the parties can later purport never happened.

A jury trial is not a dress rehearsal for each party to perform its case. Nor are the Court's prior rulings and opinions mere hook up sheets or prompt scripts. The finality of jury verdicts and the presumption that a jury verdict is correct until the appeal process has run its course are both fundamental to the legal system. That the parties have now settled their dispute does not change the fact that over a two-week period a jury considered a vast amount of complex evidence and testimony presented by the parties, based upon which the jury ultimately came to a unanimous decision. Similarly, the parties' eventual settlement is not incongruous with the multitude of underlying Orders, decisions, and findings made by the Court as the case progressed through six years of litigation.

The Court's takes seriously that its "duty lies not in the direction of an automatic acquiescence to the parties' request, but rather with a deliberate consideration of the policy that will best serve the public good." *Clrendon*, 936 F.2d at 129. The parties' request to vacate the Court's Judgment is denied, and the parties' request that the Court vacate the Orders, decisions, and findings underlying both its Judgment and its Permanent Injunction is denied.

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 10 of 30

Eagle View Technologies, Inc. v. Xactware Solutions, Inc., Not Reported in Fed. Supp....
2021 WL 5239091

**IV. CONCLUSION**

For the reasons stated above, the parties' proposed Stipulation and Order Vacating Judgment and Permanent Injunction Previously Issued by the Court in this Matter and Dismissing All Claims and Counterclaims With Prejudice is hereby GRANTED, in part, and DENIED, in part, as specifically set forth in the accompanying Order issued on this date.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5239091

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 794589
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

HOSPIRA, INC., et al., Plaintiffs,

v.

SANDOZ INC., et al., Defendants.

Civil Action No. 09–4591 (MLC).
|
Feb. 27, 2014.

**Attorneys and Law Firms**

Liza M. Walsh, Agnieszka Antonian, Connell Foley LLP, Roseland, NJ, Thomas J. Meloro, Jr., Willkie Farr & Gallagher LLP, New York, NY, for Plaintiffs.

**MEMORANDUM OPINION**

MARY L. COOPER, District Judge.

**\*1  THE PARTIES** to this action jointly move pursuant to Federal Rule of Civil Procedure ("Rule") 60(b) to vacate the parts of this Court's opinion, and order and judgment, that declared a certain pharmaceutical patent to be invalid ("Motion to Vacate"). (*See* dkt. entry no. 404, Joint Notice of Mot.) A nonparty to this action, Caraco Pharmaceutical Laboratories, Ltd. ("CPL") cross-moves to permissibly intervene in this action pursuant to Rule 24(b), or alternatively for leave to file a brief as *amicus curiae,* in order to oppose the Motion to Vacate ("Cross Motion"). (*See* dkt. entry no. 410, CPL Notice of Cross Mot.) For the following reasons, the Court will grant the Motion to Vacate and deny the Cross Motion.

**PLAINTIFFS,** Hospira, Inc. and Orion Corporation, brought this action against Defendants, Sandoz Inc. and Sandoz Canada Inc., on September 4, 2009, alleging, *inter alia,* that Defendants infringed United States Patent No. 6,716,867 ("the '867 Patent"). (*See* dkt. entry no. 1, Compl.) A review of this Court's docket reveals that the dispute was actively litigated for 32 months until May 4, 2012, when this Court issued an opinion ("May 2012 Opinion") and an order and judgment ("May 2012 Judgment"), *inter alia,* finding in Defendants' favor that the '867 Patent was invalid. (*See* dkt. entry no. 381, 5–4–12 Am. J.; *see also* dkt. entry no. 380,

5–4–12 Am. Mem. Op.) Plaintiffs and Defendants separately appealed to the United States Court of Appeals for the Federal Circuit ("Federal Circuit") from the May 2012 Judgment. (*See* dkt. entry no. 385, Defs. Notice of Appeal; dkt. entry no. 386, Pls. Notice of Cross Appeal.) [1]

[1]   This action concerns an Abbreviated New Drug Application. This Court will not list every claim construction brief, dispositive motion, supporting brief, conference, oral argument, and court proceeding in order to demonstrate that this type of action entails vigorous prosecution and defense. That this Court's docket for the action contains over 400 entries is illustrative. This Court assumes that CPL, even though it is a nonparty, is well-aware of the expense and effort incurred by Plaintiffs and Defendants here, as well as the expense and effort that would be incurred on appeal in the Federal Circuit.

**WHILE** the entire dispute remained pending in the Federal Circuit, the parties (1) notified this Court on December 6, 2013, that the dispute insofar as it concerned the '867 Patent had been tentatively settled, and (2) sought an indicative ruling pursuant to Rule 62.1 that this Court would agree to vacate the parts of the May 2012 Opinion and the May 2012 Judgment concerning the '867 Patent as part of the settlement if the Federal Circuit remanded the action. (*See* dkt. entry no. 400, Notice of Mot.) On December 16, 2013, this Court advised the parties that it would indeed so vacate upon the Federal Circuit's remand. (*See* dkt. entry no. 402, 12–16–13 Order.)

**BY AN ORDER** dated December 23, 2013 ("12–23–13 Federal Circuit Order"), the Federal Circuit remanded "for the limited purpose of the district court's consideration of the parties' motion for vacatur," but stated that it "retain[ed] jurisdiction so that any of the parties may seek appellate review" and that "[t]he appeals are held in abeyance pending the resolution of the motion for vacatur by the district court". (*See* dkt. entry no. 410–7, 12–23–13 Fed. Cir. Order at 2.)

**THE PARTIES** jointly filed the Motion to Vacate on the same day that the 12–23–13 Federal Circuit Order was issued, arguing that:

**\*2**  the parties have independently reached a mutually agreed settlement in the appeal of the above-captioned case. The parties have independently determined that the public and private benefits of settlement are significant,

outweigh their respective opportunities to proceed with their important appellate rights.... Hospira has vigorously contested [this Court's] ruling [on the ʹ867 Patent] before the Federal Circuit, but faced the risk that the Court's judgment will be affirmed and that [Defendants] could enter the market unimpaired. [Defendants], on the other hand, faced the risk that the Court's ruling will be reversed, possibly leading to an injunction through 2019, and exposure to damages if [they launch] while the appeal is pending. Informed in large part by their experience at the trial and their views of this Court's decision, the parties have now agreed that they and the public would be benefited by increased certainty, and accordingly, they have agreed that [Defendants] may launch [their] product on December 26, 2014, or even earlier in certain circumstances. That permits generic competition almost five years before [Defendants] could launch if the ʹ867 patent were found valid.

The settlement balances the rights of both parties, preserving [Plaintiffs'] important rights inherent in patent ownership, while removing the possibility that [Defendants] would be enjoined from launching [their] product until the ʹ 867 patent expires. Both sides have independently assessed the risks of proceeding with their appeals and have reached what they believe to be an equitable settlement.

(Dkt. entry no. 404–1, Jt. Redacted Mem. of Law in Support of Mot. to Vacate at 5–6.)

**CPL** filed a letter on the same day, notifying this Court of its intention to seek intervention, as: (1) "Hospira sued [CPL] in the United States District Court for the Eastern District of Michigan (*see Hospira, Inc. v. Caraco Pharms. Labs., Ltd.,* Case No. 10–14514 (E.D.Mich.)) [ ("Michigan Action") ], in November 2010 alleging infringement of the ʹ867 patent"; (2) "Hospira is barred by collateral estoppel from pursuing a claim of infringement of the ʹ 867 patent in light of this Court's ʹ867 Patent Invalidity Judgment"; (3) "at the invitation of the Michigan district court, [CPL] submitted a motion for summary judgment based on collateral estoppel in view of [this Court's] ʹ 867 Patent Invalidity Judgment"; and (4) CPL "has a substantial interest in any decision this Court may reach regarding vacatur", as "[a]ny decision by this Court regarding vacatur will necessarily impact the Michigan [Action]". (Dkt. entry no. 407, 12–23–13 CPL Letter at 1–2.)

**CPL** followed by filing the cross motion on December 24, 2013. (*See* CPL Notice of Cross Mot.) In support, CPL stated

that briefing for the aforementioned motion for summary judgment pending in the Michigan Action would be "close[d] on December 31, 2013". (Dkt. entry no. 410–1, CPL Br. in Support of Cross Mot. at 3.) CPL also filed separate opposition to the Motion to Vacate. (*See* dkt. entry no. 410–2, CPL Br. in Opp.) CPL asserts in the opposition brief that "[a]t present, the ʹ867 patent stands invalid because of the Court's judgment." (*Id.* at 13.)

**\*3** Plaintiffs have filed opposition to the Cross Motion. (*See* dkt. entry no. 411, Pls. Mem. in Opp.) They point out therein that CPL was well-aware of the pending appeal and agreed to stay the Michigan Action pending the outcome before the Federal Circuit. (*See id.* at 3.) The docket for the Michigan Action supports that contention. *See* Michigan Action, dkt. entry no. 56, 5–7–12 So–Ordered Stipulation (staying Michigan Action pending outcome of Federal Circuit appeal); dkt. entry no. 60, 5–24–13 Order Extending Stay. The stay in the Michigan Action apparently was eventually extinguished, even though the dispute addressed by this Court remained pending in the Federal Circuit.

**WHETHER** to permit CPL to intervene under Rule 24(b) is a matter of discretion for this Court. *See* Fed.R.Civ.P. 24(b)(3) (stating intervention determination is discretionary exercise). This Court initially finds that there is jurisdiction here, as (1) this is a patent dispute, and (2) the action has been remanded by the Federal Circuit. This Court also finds that the validity of the ʹ867 Patent is at issue here and in the Michigan Action, and thus there is arguably a common question of law or fact. *See* Fed.R.Civ.P. 24(b)(1)(B).

**BUT** the Cross Motion insofar as it concerns intervention is not timely, as CPL should have sought to intervene earlier. *See* Fed.R.Civ.P. 24(b)(1) (stating court may permit intervention "[o]n timely motion"). CPL was neither thwarted nor lulled into complacency by Plaintiffs or Defendants. *Cf. United States v. Alcan Aluminum,* 25 F.3d 1174, 1181 (3d Cir.1994) (stating movant timely sought intervention, even though action had been ongoing for several years, as party induced movant to refrain from moving to intervene).

**IT WOULD** be inequitable to require parties engaged in pharmaceutical patent litigation to move to intervene in every separate action in every district court wherein the same patent is at issue. But it is not unreasonable for a nonparty to seek to intervene in a separate action if that separate action has reached the point of dispositive motions, trial, or appeal, because at that point the nonparty knows or should know of

its interest in a case. *See Price v. Daigre,* No. 08–16, 2011 WL 6046313, at *2 (S.D.Miss. Dec.5, 2011) (denying intervention motion in view of totality of circumstances); *see also Univ. of Notre Dame v. Sebelius,* No. 13–3853, 2014 WL 687134, at *11 (7th Cir. Feb.21, 2014) (stating nonparty's intervention may be permitted for first time on appeal). CPL failed to move to intervene at any of the aforementioned points in this litigation before the parties advised this Court that the dispute at issue had been settled, and thus this Court finds the request to intervene to be untimely. *See Ericsson, Inc. v. Interdigital Commc'ns Corp.,* 418 F.3d 1217, 1222 n. 5 (Fed.Cir.2005) (chastising movant for waiting until dispute had settled to move to intervene, as movant was aware of progress of case for two years before seeking to intervene).

**\*4 CPL** will not be prejudiced if its request to intervene is denied, as it will not be prevented from arguing that the ′867 Patent is invalid in the Michigan Action. CPL is aware of the reasoning set forth in the May 2012 Opinion and can borrow that reasoning in support of any future motion for summary judgment in the Michigan Action. *See Price,* 2011 WL 6046313, at *3 (finding movant seeking intervention not prejudiced "because it still has an adequate remedy" within the confines of its own action). Plaintiffs and Defendants, in stark contrast, will be prejudiced if CPL is permitted to intervene at this stage and to interfere with the settlement concerning the ′ 867 Patent. *See* Fed.R.Civ.P. 24(b) (3) (stating "court must consider whether the intervention will unduly delay or prejudice the adjudication of *the original parties' rights"* ) (emphasis added).

**IT IS** unfortunate that Plaintiffs and Defendants could not settle the dispute at issue before this Court issued the May 2012 Opinion. But this Court sees no reason to squelch a settlement agreement reached by the parties to this action while the dispute at issue is pending at the appellate level. *See Price,* 2011 WL 6046313, at *3 (finding parties would be prejudiced by intervention, especially as case had progressed to settlement); *Dixon v. Margolis,* No. 89–5019, 1992 WL 80512, at *5 n. 5 (N.D. Ill. Apr 14, 1992) (stating intervention motion filed after original parties have settled is unlikely to be granted).

**CPL'S ARGUMENT** that the ′867 Patent is invalid due to the May 2012 Judgment, and thus that the May 2012 Opinion carries precedential weight, is without merit in view of the appellate proceedings that remain pending before the Federal Circuit. A district court opinion issued in a pharmaceutical-patent dispute that is on appeal to the Federal Circuit—as opposed to an opinion issued by the Federal Circuit itself—is mere persuasive authority. *See Camreta v. Greene,* ––– U.S. ––––, –––– n. 7, 131 S.Ct. 2020, 2033 n. 7, 179 L.Ed.2d 1118 (2011) (stating district court decision is not binding precedent in different district, in same district, or on same judge in different case); *Old Republic Ins. Co. v. Chuhak & Tecson, P.C.,* 84 F.3d 998, 1003 (7th Cir.1996) (stating "decisions by district judges do not have the force of precedent"); *McMullen v. European Adoption Consultants,* 129 F.Supp.2d 805, 811 n. 2 (W.D.Pa.2001) (noting as to dispute therein "that the Court of Appeals has not decided the question and that district court opinions are merely persuasive authority").

**CPL'S ALTERNATIVE REQUEST** for leave to file a brief as *amicus curiae* is a matter to be decided in this Court's discretion. *See Waste Mgmt. of Pa. v. City of York,* 162 F.R.D. 34, 37 (M.D.Pa.1995); *Yip v. Pagano,* 606 F.Supp. 1566, 1568 (D.N.J.1985), *aff'd,* 782 F.2d 1033 (3d Cir.1986) (table decision). Leave to so file may be granted if a court desires assistance in the understanding of an issue, and if the information offered is timely and useful. *See Waste Mgmt. of Pa.,* 162 F.R.D. at 36. This Court requires no further assistance in this dispute and declines to grant CPL leave to file a brief as *amicus curiae. See Avellino v. Herron,* 991 F.Supp. 730, 732 (E.D.Pa.1998).

**\*5 THE MOTION TO VACATE** has been made jointly by the parties to this action. They have settled part of their dispute amicably before incurring further expense at the appellate level. Settlements are—of course—highly favored. That generic competition will occur sooner than later should also be highly favored as a matter of public policy. This Court sees no reason to obstruct the settlement achieved here. *See Goldman v. Gen. Accident Ins. Co. of Am.,* No. 01–2686, 2007 WL 2781935, at *1 (D.N.J. May 24, 2007) (granting motion to vacate judgment and order where (1) parties agreed to settle dispute after notice of appeal filed, (2) settlement was contingent on district court's vacatur, and (3) Court of Appeals granted uncontested motion for limited remand for limited purpose of allowing parties to move to vacate in district court); *Kim v. United States,* 903 F.Supp. 1546, 1546 (S.D.N.Y.1995) (granting motion to vacate opinion and judgment where (1) parties agreed to settle dispute after notice of appeal filed, and (2) settlement was contingent on district court's vacatur). This Court will exercise its discretion to vacate its own rulings and grant the Motion To Vacate. *See* Fed.R.Civ.P. 60(b)(6), (c)(1) . [2]

2

CPL relies on *Devore v. City of Philadelphia,* No. 00–3598, 2003 WL 21961975, at *1–3 (E.D.Pa. June 24, 2003),* wherein (1) judgment was entered upon a jury verdict, (2) the parties reached an agreement to settle after judgment had been entered, and (3) the court denied a motion to vacate the judgment. This Court declines to follow *Devore* to the extent that its reasoning may be viewed as being contrary to this Court's decision.

**THE COURT** will grant the Motion to Vacate, and deny the Cross Motion. For good cause appearing, the Court will issue an appropriate order and judgment. [3]

3

The 12–23–13 Federal Circuit Order states that "[t]he parties should promptly inform [that] court of the district court's ruling on the motion pursuant to Fed.R.App.P. 12.1(b) and should propose how they believe the appeals should proceed in light of the district court's ruling". (12–23–13 Fed. Cir. Order at 2.) The parties should now so inform the Federal Circuit.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 794589

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 15 of 30

Janssen Products, L.P. v. Lupin Limited, Not Reported in Fed. Supp. (2015)

2015 WL 12868208
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States District Court, D. New Jersey.

JANSSEN PRODUCTS, L.P., et al., Plaintiffs,

v.

LUPIN LIMITED, et al., Defendants.

Civ. No. 10–5954 (WHW)

|

Signed 12/11/2015

**Attorneys and Law Firms**

Zhiqiang Liu, Patterson Belknap Webb & Tyler, New
York, NY, Carissa L. Rodrigue, Elina Slavin, John Edmund
Flaherty, Jonathan M.H. Short, Mark H. Anania, Ravin R.
Patel, McCarter & English LLP, Newark, NJ, for Plaintiffs.

James E. Cecchi, Melissa E. Flax, Carella Byrne Cecchi
Olstein Brody & Agnello, P.C., Roseland, NJ, Mayra Velez
Tarantino, Michael E. Patunas, Patunas Tarantino LLC,
William C. Baton, Saul Ewing LLP, Newark, NJ, for
Defendants.

**OPINION AND ORDER**

Hon. William H. Walls, United States Senior District Judge

**\*1** Before this Court is a joint motion from Plaintiffs
Janssen Products, L.P. and Janssen Sciences Ireland UC and
Defendants Mylan Pharmaceuticals Inc. and Mylan Inc. for
an indicative ruling under Federal Rule of Civil Procedure
62.1. The case, a patent infringement action, is currently on
appeal to the Court of Appeals for the Federal Circuit. The
Janssen and Mylan parties have reached a settlement and seek
a ruling that, if the case is remanded to this Court, the Court
will issue an order under Federal Rule of Civil Procedure
60(b) modifying the final judgment order and trial opinion
entered on August 14, 2014 to incorporate the terms of the
settlement agreement. Decided without oral argument under
Fed. R. Civ. P. 78, the Court grants the parties' joint motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Janssen Products, L.P. and Janssen Sciences
Ireland UC (collectively, "Janssen") and G.D. Searle, LLC
brought this action against Defendants Lupin Limited
and Lupin Pharmaceuticals Inc. (collectively, "Lupin"),
Mylan Pharmaceuticals Inc. and Mylan Inc. (collectively,
"Mylan"), and Teva Pharmaceuticals USA, Inc. and
Teva Pharmaceutical Industries, Ltd. (collectively "Teva").
Plaintiffs, patent-holders and drug-makers, sued Defendants,
generic drug manufacturers, for alleged infringements of
patents on the chemical compound darunavir, used in the
manufacture of Plaintiffs' product, Prezista, arising out of
Defendants' filing of Abbreviated New Drug Applications
("ANDAs") seeking approval to sell generic versions of
Prezista. Amended Complaint, ECF No. 267 ¶ 1. The facts of
the case are presented thoroughly in the Court's August 14,
2014 opinion finding patent infringement by the Defendants
and granting Plaintiffs' request for a permanent injunction
barring Defendants from manufacturing, importing, using or
selling their ANDA products in the United States, ECF No.
943, and are incorporated here by reference.

In the opinion and accompanying order, ECF No. 944, the
Court held in part that the sale of darunavir tablets described
in Mylan's ANDA 202136 would infringe claim 13 of U.S.
Patent No. 7,772,411 (the '411 Patent), which is held by
Plaintiffs, *id.* at 2, and enjoined Mylan from "using, selling,
or offering for sale in the United States, or importing into the
United States, the [ANDA 202136 product] or any darunavir
product made by any colorable variation of the process used
to make Mylan's ANDA 202136 product." *Id.*

Defendants Mylan and Lupin filed a motion to amend the
August 14, 2014 injunctive order on August 19, 2014, ECF
No. 947, which the Court denied on October 7, 2014. ECF
No. 2012. Defendants Mylan and Lupin separately appealed
the August 14, 2014 judgment "and all underlying adverse
opinions, orders, decisions, and rulings subsumed within
said Judgment and/or made prior to entry of Judgment in
this action, and/or relating to the scope of any relief award
pursuant to said Judgment" on September 12, 2014. Lupin
Notice of Appeal, ECF No. 983 at 2; Mylan Notice of Appeal,
ECF No. 984 at 2. The appeals are currently pending before
the Federal Circuit. *Janssen Products, L.P. v. Lupin Limited,*
No. 14–1842 (Fed. Cir. 2014).

**\*2** On November 9, 2015, after Janssen and Mylan
completed briefing but before the Federal Circuit heard oral
argument on Mylan's appeal, Janssen and Mylan executed
a settlement agreement and license agreement resolving

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 16 of 30

Janssen Products, L.P. v. Lupin Limited, Not Reported in Fed. Supp. (2015)

Janssen's claims regarding the '411 Patent. Joint Mot. Indicative Ruling, ECF No. 1063 at 1. Under the agreement, Janssen will permit Mylan to manufacture and sell ANDA products at a specified date before the expiration of the '411 patent. *Id.* at 3. The August 14, 2014 injunctive order currently bars Mylan from manufacturing or selling these products before the expiration of the patent. *Id.*

At the parties' request, the Federal Circuit granted a stay of further appellate proceedings pending the completion of the settlement. *Id.* at 2; *Janssen,* No. 14–1842, ECF No. 84. On November 20, 2015, Janssen and Mylan filed a motion in this Court under Fed. R. Civ. P. 62.1 for an indicative ruling that, if the case were remanded, the Court would modify the August 14, 2014 injunctive order to allow Mylan to manufacture and sell ANDA products during the term of the '411 patent as permitted in the settlement agreement. ECF No. 63.

The Court now considers whether (a) it may issue an indicative ruling under Rule 62.1 and (b) whether modification of the August 14, 2014 injunction is warranted under Rule 60(b).

### STANDARD OF REVIEW

"Generally, a notice of appeal divests the District Court of jurisdiction 'over those aspects of the case involved in the appeal.' " *Kull v. Kutztown Univ. of Pa.,* 543 Fed.Appx. 244, 248 (3d Cir. 2013) (quoting *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982)). Under Fed. R. Civ. P. 62.1, if a party files a motion "that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a). According to the Advisory Committee Notes from Rule 62.1's adoption in 2009, this rule codifies "the practice that most courts follow when a party makes a Rule 60(b) motion to vacate a judgment that is pending on appeal. After an appeal has been docketed and while it is pending, the district court cannot grant a Rule 60(b) motion without a remand," but it can "state that it would grant the motion if the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1 2009 Advisory Committee Notes; *see also Ray v. Pinnacle Health Hospitals, Inc.,* 416 Fed.Appx. 157,161 n.3 (3d Cir. 2010) (discussing indicative rulings under Rule 62.1 and noting that "Rule 62.1 was designed to adopt the practice most trial courts follow

when a party makes a Rule 60(b) motion."). If the court issues an indicative ruling stating that it would grant the motion, the "movant must promptly notify the circuit clerk under Fed. R. App. P. 12.1." Fed. R. Civ. P. 62.1(b). "The district court may decide the motion if the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1(c).

Fed. R. Civ. P. 60(b) allows a court to provide relief from a judgment or order when, among other things, "applying the judgment order prospectively is no longer equitable" (subsection (b)(5)), or "for any other reason that justifies relief (subsection (b)(6)). The Court's power to grant relief under this rule is narrow. "Due to the overriding interest in the finality and repose of judgments, a Rule 60(b) motion is considered extraordinary relief which should be granted only where extraordinary justifying circumstances are present." *Katz v. Twp. of Westfall,* 287 Fed. Appx. 985, 988 (3d Cir. 2008) (quotations and citations omitted).

**\*3**  "[I]t is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction or consent decree can show a 'significant change either in factual conditions or in law' " *Agostini v. Felton,* 521 U.S. 203, 215 (1997) (quoting *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 384 (1992)). If the movant can demonstrate this significant change in factual conditions or law, the Court should "consider whether the proposed modification is suitably tailored to the changed circumstances." *Rufo,* 502 U.S. at 383.

### DISCUSSION

**I. An indicative ruling is warranted under Rule 62.1**
The parties jointly move for a Rule 60(b) modification of this Court's August 14, 2014 injunctive order against Mylan. ECF No. 944. As discussed, the Court does not have jurisdiction to modify the order because Mylan's appeal of the August 14,2014 order is pending before the Federal Circuit. *Kull,* 543 Fed.Appx. at 248. Under Rule 62.1, the Court may issue an "indicative ruling" stating "that it would grant the motion if the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1(a). As the Court will discuss, it will grant the Rule 60(b) motion if the Federal Circuit remands for that purpose.

**II. The Court would grant the parties' joint Rule 60(b) motion to modify the injunctive order.**
The parties seek a limited modification of the Court's August 14, 2014 order enjoining Mylan from manufacturing and

selling ANDA products. The proposed order does not modify the Court's earlier findings of fact or conclusions of law, ECF No. 943, nor does it modify the Court's judgment against Defendants Lupin and Teva. Proposed Order Modifying Judgment, ECF No. 1063–2 Ex. A. Instead of holding that Mylan's production of the darunavir tablets described in ANDA 202136 would infringe claim 13 of the '411 patent and enjoining Mylan from producing, using, selling, or importing the tablets at any time before the '411 patent's expiration, the proposed modified order states that production would infringe the '411 patent "absent a license from Plaintiffs" and enjoins Mylan from producing the tablets "before such date provided under the Settlement Agreement and License Agreement between Mylan and Plaintiffs." *Id.* at 1–2.

Modification of the August 14, 2014 injunctive order is appropriate under Rule 60(b)(5) and 60(b)(6) because applying the judgment prospectively "is no longer equitable." Fed. R. Civ. P. 60(b)(5). There has been a "significant change ... in factual conditions," *Agostini v. Felton,* 521 U.S. at 215, namely that Janssen and Mylan have settled and that Janssen has agreed to allow Mylan to sell darunavir tablets at a certain future date. Given the Third Circuit's strong policy "in favor of voluntarily settlement agreements," *Ehrheart v. Verizon Wireless,* 609 F.3d 590, 594 (3d Cir. 2010), it would be inequitable for the Court to refuse to modify a judgment preventing the parties from carrying out this settlement. *See also Tommy Hilfiger Licensing, Inc. v. Costco Companies, Inc.,* 2002 WL 31653948 (granting motion for indicative ruling vacating judgment under Rule 60(b)(6) because parties settled while matter was on appeal to Second Circuit); *but see Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.,* 648 F. Supp. 2d 226, 239 (D. Mass. 2009) (discussing at length denial of parties' joint motion for relief from judgment because there is "nothing exceptional" in a "plain vanilla settlement" requiring Rule 60(b)(6) relief, and explaining that

"a judicial decision rendered with finality should be addressed on the merits and then discarded only if unpersuasive on the merits.").

**\*4** The proposed modified order is appropriate here because it is "suitably tailored to the changed circumstances." *Rufo,* 502 U.S. at 383. The proposed order leaves intact the Court's findings of fact and law and the injunctive relief ordered against the remaining Defendants. Additionally, Mylan would still be liable for patent infringement if it produced or sold darunavir tablets before the date specified in the settlement agreement or otherwise in violation of the "license from Plaintiffs." ECF No. 1063–2 Ex. A at 1–2. The modified judgment does not "discard" the Court previous decision, *Vertex,* 648 F. Supp. 2d at 239, but simply allows the settling parties to comply with the terms of their settlement agreement.

## CONCLUSION AND ORDER

The Court finds that the jointly requested 60(b) relief is warranted, ECF No. 1063, but lacks jurisdiction to modify the August 14, 2014 opinion and order, ECF No. 933, 934. For this reason, the Court advises the Federal Circuit that, if the case is remanded for this purpose, the Court will issue the proposed order modifying judgment with respect to Mylan, ECF No. 1063–2 Ex. A, allowing the settling parties to comply with the terms of their settlement agreement. Janssen and Mylan are hereby ordered to notify the circuit clerk of this indicative ruling under Fed. R. Civ. P. 62.1(b).

**All Citations**

Not Reported in Fed. Supp., 2015 WL 12868208

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Johnson v. Specialized Loan Servicing, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 8437149

2019 WL 8437149
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Jacksonville Division.

Mary R. JOHNSON, Plaintiff,

v.

SPECIALIZED LOAN SERVICING, LLC, Defendant.

Case No. 3:16-cv-178-J-MCR
|
Signed 09/25/2019

**Attorneys and Law Firms**

Clayton Travis Miller, Lynn Drysdale, Jacksonville Area Legal Aid, Inc., Jacksonville, FL, Jeffrey Neil Golant, Fidelity National Law Group, Ft Lauderdale, FL, Kevin Rajabalee, KR Legal, P.A., Hollywood, FL, Sean Xavier Foo, Glantz & Glantz, PA, Plantation, FL, for Plaintiff.

Derek Kyle Mountford, Holland & Knight, LLP*, Nicholas Mark New, II, McGlinchey Stafford, PLLC, Jacksonville, FL, Peter James Maskow, McGlinchey Stafford, PLLC, Ft. Lauderdale, FL, for Defendant.

**ORDER**

MONTE C. RICHARDSON, UNITED STATES MAGISTRATE JUDGE

**\*1** **THIS CAUSE** is before the Court on Defendant Specialized Loan Servicing, LLC's Unopposed Motion to Vacate Judgment (Doc. 115) and Findings of Fact and Conclusions of Law (Doc. 114) ("Motion") (Doc. 128). For the reasons stated herein, the Motion is due to be **GRANTED**.

In the Motion, Defendant, Specialized Loan Servicing, LLC ("SLS"), seeks an order, pursuant to Rule 60(b)(5)-(6), Fed.R.Civ.P., vacating the Findings of Fact and Conclusions of Law entered by this Court on September 17, 2018 and vacating the Judgment entered by the Clerk of Court on September 18, 2018 in favor of Plaintiff and against Defendant on Counts I through IV of the Second Amended Complaint [1] in the amount of $2,008.55. [2] On October 12, 2018, SLS filed a Notice of Appeal of the Court's Findings of Fact and Conclusions of Law, entered on September 17, 2018, and the Judgment, entered on September 18, 2018. (Doc.

123.) On March 11, 2019, the United States Court of Appeals for the Eleventh Circuit dismissed the appeal pursuant to SLS's motion for voluntary dismissal. (Doc. 127.) The next day, SLS filed the present Motion.

[1] In the Findings of Fact and Conclusions of Law, the Court found that Plaintiff did not satisfy her burden of proving that Defendant SLS breached its obligations under Count V. (Doc. 114 at 29.)

[2] This judgment has been paid in full. (*See* Doc. 129.)

SLS represents that while the appeal was still pending, the parties "agreed in principal [sic] to amicably resolve this matter" and, as of February 14, 2019, they had a fully executed Confidential Settlement Agreement ("Agreement") to resolve this litigation. (Doc. 128 at 2.) Pursuant to the terms of the Agreement, SLS moved to dismiss the appeal [3] and "Plaintiff expressly agreed to not oppose this Motion" to vacate the Court's Findings of Fact and Conclusions of Law and the Judgment. (*Id.*)

[3] Although SLS believed it had valid arguments on appeal, it "decided to settle this matter in order to avoid the continuing cost of litigation and the uncertainty of the results of the appeal." (Doc. 128 at 2.)

SLS argues that the circumstances here warrant vacatur of the Findings and the Judgment for the following reasons:

First, as a result of the [p]arties' Agreement, the Findings and the Judgment have no further precedential effect as between these [p]arties, as their dispute has been resolved. In addition, the Plaintiff has indicated that she does not oppose the vacatur of the Findings and the Judgment, as sought in this Motion. The settlement by the [p]arties also concludes the need for this litigation to continue, saving the resources of the Courts and the [p]arties. Indeed, the settlement resolves both the Appeal before the Eleventh Circuit and any subsequent litigation in this Court, including actions on remand or for an award of attorney's fees that might occur following resolution of the issues in the Appeal.... As such, vacatur of the Judgment and the Findings is both in the interest of the [p]arties, and of benefit to the public.

**\*2** On the other hand, it is respectfully submitted that the Judgment and conclusions of law made in the Findings would be of slight precedential value to future litigants, as

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 19 of 30

Johnson v. Specialized Loan Servicing, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 8437149

the[y] both were based upon the very specific and detailed findings of fact made in the instant matter by this Court. Although the public interest is served by the preservation of judicial precedent, given the fact-specific nature of the findings at issue here, and in light of the benefits to the [p]arties and the federal court system as a whole that would be served by vacatur, SLS requests that this Court give effect to the purpose and beneficial effect of settlement, agreed to by the [p]arties, and consider those in equity against the slight public interest that may exist in the precedential value of the Judgment and the Findings.

The value of this Settlement has the effect of finally resolving the dispute between the [p]arties in an amicable fashion, saving the need for further cost and expense by the [p]arties or by the federal courts. The value to the public of these savings is not only commonly recognized, but also as stated above, an accepted benefit in the eyes of the Eleventh Circuit. Therefore, the Judgment and the Findings should be vacated pursuant to Fed.R.Civ.P. 60(b)(5) as it is no longer equitable that the Judgment and the Findings have prospective application. Vacatur of the Judgment and the Findings [is] also appropriate under Fed.R.Civ.P. 60(b)(6) as the nature of the settlement reached between the [p]arties and the consequential savings to the federal court system constitute other circumstances that would justify this relief. SLS respectfully submits that equitable principles weighed in light of the circumstances of this case should lead the Court to exercise its discretion and vacate the Judgment and the Findings.

(*Id.* at 3-5.)

Rule 60(b), Fed.R.Civ.P., allows the Court to relieve a party from a final judgment, order, or proceeding for the following reasons:

> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

> (6) any other reason that justifies relief. [4]

Fed.R.Civ.P. 60(b). "Motions under [Rule 60(b)] are directed to the sound discretion of the district court." *Griffin*, 722 F.2d at 680.

[4]     Relief under Rule 60(b)(6) "is an extraordinary remedy which may be invoked only upon a

showing of exceptional circumstances," and "[t]he party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984).

In *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, the Supreme Court set out an equitable approach generally counseling against granting requests for vacatur made after a settlement, but provided an exception to the general rule for "exceptional circumstances." 513 U.S. 18, 29 (1994) (also cautioning that "those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur"). Under this equitable approach, "courts determine the propriety of granting vacatur by weighing the benefits of settlement to the parties and to the judicial system (and thus to the public as well) against the harm to the public in the form of lost precedent." *Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331, 1336 (11th Cir. 2016). "The precise application of this approach will vary case by case." *Id.*

Upon weighing the equities in this case, the Court finds it is appropriate to exercise its discretion in favor of vacatur. First, both parties here seek relief from the Court's Findings of Fact and Conclusions of Law and the Clerk's Judgment. *See Heartland Catfish Co. v. Navigators Specialty Ins. Co.*, No. 15-368-CG-M, 2018 WL 1913549, *2 (S.D. Ala. Mar. 6, 2018) (noting that "both the successful and unsuccessful parties here seek relief from the [summary judgment] order," whereas "[i]n *Bancorp*, the successful party opposed vacatur and the [Supreme] Court addressed only whether the settlement in and of itself was sufficient reason to vacate the judgment"); *see also Hartford*, 828 F.3d at 1336 (stating that "both parties to the settlement desire vacatur because settlement would otherwise be impossible"). Further, "[t]he settlement agreement will permanently end the litigation, and no third parties will be impacted by the vacatur." *River House Partners, LLC v. Grandbridge Real Estate Capital LLC*, Case No. 15-00058-BAJ-RLB, 2018 WL 813903, *1 (M.D. La. Feb. 8, 2018).

**\*3** The Court recognizes that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole." *U.S. Bancorp*, 513 U.S. at 26 (internal quotation marks and citations omitted). However, "the public interest is not served only by the preservation of precedent. Rather, the public interest is also served by settlements when previously committed judicial resources are made available to deal with other matters, advancing the efficiency of the federal

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 20 of 30

Johnson v. Specialized Loan Servicing, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 8437149

courts." *Hartford*, 828 F.3d at 1337. Thus, "[w]hen proper consideration is given to the interests of the parties, the judicial system, and the public taken together, vacatur may still prove an appropriate remedy even if the public's interest in the preservation of precedent is not affirmatively advanced when considered in isolation." *Id.*

Here, the slight precedential value of the Court's ruling due to the fact-specific nature of the Court's findings "is just one factor [in the analysis] and it does not outweigh the other equitable considerations." *River House*, 2018 WL 813903 at *1. The slight value of preserving this Court's ruling and the corresponding Judgment "is outweighed by the direct and substantial benefit of settling this case to [the parties] and to the judicial system (and thus to the public as well)." *Hartford*, 828 F.3d at 1336; *see also Heartland*, 2018 WL 1913549 at *2 (finding that "the slight value of preserving [the district court's] ruling on questions of Pennsylvania contract law is strongly outweighed by the benefits to the parties in settling the litigation and to the public in preserving judicial resources"); *Central Mississippi Credit Corp. v. Vaughn*, Case No. 3:15-cv-932-JAR, 2016 WL 7107769, *2 (M.D. Ala. Dec. 6, 2016) (concluding that "whereas there may be some slight harm to the public in vacating the court's opinion, that harm does not outweigh the benefits to the parties in settling the litigation and to the public in preserving judicial resources"). As the parties represent, the settlement "concludes the need for this litigation to continue, saving the resources of the Courts and the [p]arties" by resolving "both

the Appeal before the Eleventh Circuit and any subsequent litigation in this [C]ourt, including actions on remand or for an award of attorney's fees that might occur following resolution of the issues in the Appeal." (Doc. 128 at 4.) Based on the foregoing, the Court finds that the Findings of Fact and Conclusions of Law and the corresponding Judgment, entered in September 2018, are due to be vacated as it is no longer equitable to apply them prospectively. *See* Fed.R.Civ.P. 60(b)(5).

Accordingly, it is **ORDERED**:

1. The Motion (**Doc. 128**) is **GRANTED**.

2. The Findings of Fact and Conclusions of Law (**Doc. 114**) and the Judgment (**Doc. 115**) are **VACATED**.

3. The parties shall have until **October 25, 2019** to file a joint motion for dismissal or other appropriate documents to close out the case. If the parties have not filed such documents by the deadline, the case will automatically be deemed to be dismissed without prejudice.

**DONE AND ORDERED** at Jacksonville, Florida, on September 25, 2019.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 8437149

---

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

LoanCare, LLC v. Ragusa, Not Reported in Fed. Supp. (2021)

2021 WL 1318024

2021 WL 1318024
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

LOANCARE, LLC, Plaintiff,

v.

Mark P. RAGUSA, Defendant.

19-CV-1714(JS)(ARL)
|
Signed 04/08/2021

**Attorneys and Law Firms**

For Plaintiff: Stephen J. Vargas, Esq., Gross Polowy LLC, 900 Merchants Concourse, Suite 412, Westbury, New York 11590.

For Defendant: No appearance.

MEMORANDUM & ORDER

SEYBERT, District Judge:

**\*1** Before the Court is Plaintiff LoanCare, LLC's ("Plaintiff") motion to (1) vacate the Judgment of Foreclosure and Sale pursuant to Federal Rule of Civil Procedure 60(b); and (2) cancel the Notice of Pendency of Action filed with the Office of the Clerk of Suffolk County on April 5, 2019, and with this Court on April 8, 2019, pursuant to Section 6514(a) of New York Civil Practice Laws and Rules. [1] (See Mot., ECF No. 18; Declaration of Stephen J. Vargas, Esq. ("Vargas Decl."), ECF No. 19.) Defendant has not opposed the motion. For the following reasons, Plaintiff's motion is GRANTED.

[1]    Plaintiff also seeks to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(2). (See Mot.) The Court does not address this request because this case was dismissed and marked closed on October 27, 2020. (See ECF No. 17.)

BACKGROUND

I. Facts

The Complaint alleges that on November 3, 2003, defendant Mark P. Ragusa ("Defendant") executed and delivered a note to United Northern Mortgage Bankers, Ltd. whereby

he promised to pay $267,950 plus interest at an annual rate of 6.875% (the "Note"). (Compl., ECF No. 1, ¶ 1; Note, Compl., Schedule A, ECF No. 1, at ECF pp. 6-8.) Defendant concurrently executed and delivered a mortgage ("Mortgage") to secure payment on the Note. (Compl. ¶ 7.) The Mortgage was recorded with the Office of the Suffolk County Clerk on January 24, 2004 at Book 20633/Page 371. (Id.) The Mortgage was assigned many times, and most recently, Ditech Financial LLC assigned the Note and Mortgage to Plaintiff. [2]

[2]    See October Order, ECF No. 14, at 13-14 (discussing assignment history).

On January 23, 2014, Defendant executed a Loan Modification Agreement that modified the Note and Mortgage (the "Loan Modification Agreement"). (Compl. ¶ 10.) The Loan Modification Agreement was recorded with the Office of the Suffolk County Clerk on April 9, 2014 in Book 22477, Page 867. (Id.) Defendant failed to make a payment due July 1, 2018 and defaulted on the Note and Mortgage. (Id. ¶ 14.)

II. Procedural History

Plaintiff initiated this action against Defendant, seeking to foreclose on the mortgage encumbering the property located at 14 Sherry Lane, Selden, New York 11784 (the "Property"), inter alia. (See generally Compl.) The same day, a Summons was issued to Defendant at the Property address (ECF No. 5) and on April 15, 2019, Defendant served Plaintiff by delivering a copy of the Summons and Complaint to Defendant's mother at 2 Marblestone Lane, South Setauket, New York 11720 (the "South Setauket Address") (ECF No. 7). On May 17, 2019, the Clerk of Court entered a Certificate of Default against Defendant. (Cert. Default, ECF No. 9.) By Memorandum and Order dated October 16, 2020, the Court granted Plaintiff's motion for a default judgment. (October Order, ECF No. 14.) On October 27, 2020, the Court entered an Order of Judgment of Foreclosure and Sale (the "Judgment of Foreclosure and Sale") and awarded Plaintiff damages. (J. of Foreclosure & Sale, ECF No. 17.) On January 21, 2021, Plaintiff filed a motion requesting that the Court vacate the Judgment of Foreclosure and Sale pursuant to Federal Rule of Civil Procedure 60(b). (Vargas Decl. ¶ 3.)

DISCUSSION

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 22 of 30

LoanCare, LLC v. Ragusa, Not Reported in Fed. Supp. (2021)

2021 WL 1318024

## I. Legal Standard

**\*2** Federal Rule of Civil Procedure 60(b)(5) permits the Court to relieve a "party ... from a final judgment, order, or proceeding [when] ... the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable," where the motion has been made within a "reasonable time." *Eastern Savings Bank, FSB v. Strez*, 320 F.R.D. 9, 10 (E.D.N.Y. 2017) (second and third alteration in original) (citing FED. R. CIV. P. 60(b)(5) & (c)(1)). "The elapse of time ... is a less significant consideration where adverse interests join in the application." *Id.* Pursuant to Federal Rule of Civil Procedure 60(b)(6), a Court may also relieve a party from a final judgment, order or proceeding for "any other reason that justifies relief." Relief pursuant to Federal Rule of Civil Procedure 60(b)(6) is appropriate only in "extraordinary circumstances, or extreme hardship." *See DeCurtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (quoting *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004)). The proper application of Federal Rule of Procedure 60(b), generally, "strikes a balance between serving the ends of justice and preserving the finality of judgments." *Reese v. Bahash*, 574 F. App'x 21, 23 (2d Cir. 2014) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).

Moreover, the Second Circuit cautions courts against vacating judgments following settlement as a matter of course. *See Eastern Savings*, 320 F.R.D. at 11 (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994) and *Mfrs. Hanover Trust Co. v. Yanakas*, 11 F.3d 381, 385 (2d Cir. 1993)); *see also Rana v. Islam*, No. 14-CV-1993, 2019 WL 2225847, at *1 (S.D.N.Y. May 23, 2019). When determining whether to vacate a judgment following a settlement, a court must carefully balance "the interests of honoring settlements reached by the parties against the public interest in the finality of judgments and the development of decisional law." *Eastern Savings*, 320 F.R.D. at 11 (quoting *Jewelers Vigilance Cmte., Inc. v. Vitale, Inc.*, 177 F.R.D. 184, 186 (S.D.N.Y. 1998)).

## II. Plaintiff's Motion to Vacate the Judgment of Foreclosure

Plaintiff requests, and Defendant does not oppose, that the Court vacate the Judgment of Foreclosure and Sale because it "was mooted by settlement because the Plaintiff entered into a loan modification agreement with the Defendant, which settled the case and nullified the Default Judgment of Foreclosure and Sale." (Vargas Decl. ¶¶ 3, 5.) The Court, in balancing the settlement against the public interest in the finality of judgments, finds that the scales tip in favor of

granting the motion. Here, the parties settled the dispute by way of a loan modification agreement; thus, proactively applying the Judgment of Foreclosure and Sale "is no longer equitable." *Eastern Savings*, 320 F.R.D. at 11; *see also U.S. Bank Tr., N.A. v. Toney*, No. 17-CV-5516, 2019 WL 3779876, at *3 (E.D.N.Y. Aug. 12, 2019).

Further, in context of foreclosure actions, public policy concerns that "ordinarily militate against permitting settling parties to contract around a litigated judgment are of little or no relevance," because here, "decisional law [is] hardly advanced." *Eastern Savings*, 320 F.R.D. at 11 (explaining that public policy concerns that favor the finality of judgments focus on the "judicial proceedings and the collateral impacts such absence of finality might have on the development of decisional law," which are not typically at issue in a foreclosure action.) Moreover, "[n]othing before the Court suggests that the parties are attempting to 'game the system' in some fashion." *Id.* (quoting *Am. Home Assur. Co. v. Kuehne & Nagel*, No. 06-CV-6389, 2010 WL 1946718, at *2 (S.D.N.Y. May 7, 2010)). Indeed, Plaintiff, the party seeking vacatur and dismissal, originally sought the Judgment of Foreclosure and Sale and can only benefit from continued enforcement of the Judgment of Foreclosure and Sale. *Toney*, 2019 WL 3779876, at *3. Finally, no party has opposed Plaintiff's motion nor has any party requested relief from the Judgment of Foreclosure and Sale. *See Eastern Savings*, 320 F.R.D. at 11; *Toney*, 2019 WL 3779876, at *3; *Rana*, 2019 WL 2225847, at *2 ("[T]he fact that [the adverse party] does not oppose relief from the judgment weighs in favor of vacatur.").

**\*3** Therefore, Plaintiff's motion to vacate the Judgment of Foreclosure and Sale is GRANTED. *See Eastern Savings*, 320 F.R.D. at 11–12 (granting plaintiff's motion to vacate the judgment of foreclosure and sale pursuant to Rule 60(b) where the parties entered into settlement after judgment).

## III. Plaintiff's Motion to Cancel the Notice of Pendency

The Court also grants Plaintiff's request to cancel the Notice of Pendency of Action that was filed with the Office of the Clerk of Suffolk County on April 5, 2019, and with this Court on April 8, 2019, pursuant to Section 6514(a) of New York Civil Practice Laws and Rules. (*See* Notice, ECF No. 6.) Section 6514(a) permits the Court to "direct any county clerk to cancel a notice of pendency ... if the action has been settled, discontinued or abated." N.Y. C.P.L.R. § 6514(a); *Toney*, 2019 WL 3779876, at *3 (collecting cases). Accordingly, the Notice of Pendency shall be canceled in consideration of the parties' settlement by way of loan modification. *See*

Toney, 2019 WL 3779876, at *3; Nationstar Mortgage LLC v. Fernandez, No. 17-CV-0404, 2018 WL 3424452, at *1 (E.D.N.Y. Mar. 20, 2018) (vacating judgment of foreclosure of sale, dismissing the action, and cancelling the notice of pendency filed in the county clerk's office where defendant satisfied the judgment of foreclosure and sale).

CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

a) Plaintiff's motion (ECF No. 18) is GRANTED and the Clerk of the Court is directed to VACATE the October 27, 2020 Judgment of Foreclosure and Sale (ECF No. 17); and

b) The Referee, Thomas J. Stock, Esq., who was appointed to sell the Property at public auction pursuant to the Judgment of Foreclosure and Sale, is DISCHARGED and RELIEVED of any and all obligations and requirements thereunder; and

c) Pursuant to New York Civil Practice Laws and Rules, Section 6514(a), the County Clerk of Suffolk County is DIRECTED, upon payment of proper fees, if any, to cancel and discharge the Notice of Pendency filed in the Office of the Suffolk County Clerk on April 5, 2019, and with this Court on April 8, 2019, and said Clerk is DIRECTED to enter upon the margin of the record of the same a Notice of Cancellation referring to this Order; and

d) Plaintiff shall forthwith serve a copy of this Order to Defendant at the Property and the South Setauket Address, and file proof of service to the docket; and

e) This case remains CLOSED.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1318024

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 24 of 30

Phillips v. J.P. Morgan Chase Bank, N.A., Not Reported in Fed. Supp. (2020)

2020 WL 8052919
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Austin Division.

Travis R. PHILLIPS, Plaintiff,

v.

J.P. MORGAN CHASE BANK, N.A., Defendant.

1:18-CV-501-RP
|
Signed 08/15/2020

**Attorneys and Law Firms**

Anatole Robert Barnstone, The Law Office of Anatole Barnstone, George Blaine Slade, George B. Slade, PLLC, Austin, TX, for Plaintiff.

Gregory M. Sudbury, William Lance Lewis, Eric G. Carlson, Quilling, Selander, Lownds, Winslett & Moser, P.C., Dallas, TX, for Defendant.

**ORDER**

ROBERT PITMAN, UNITED STATES DISTRICT JUDGE

 *1 Before this Court is Travis R. Phillips's ("Phillips") and JPMorgan Chase Bank, N.A.'s ("JP Morgan Chase") Agreed Motion to Vacate Judgment in Part. (Dkt. 37). In their motion, the parties state that they have reached a settlement in which Phillips agreed to dismiss his appeal and the parties agreed to vacate portions of this Court's orders and final judgment. (*Id.* at 1). The parties therefore request that, pursuant to their settlement agreement, this Court vacate its Final Judgment, in part, and orders relating to attorney's fees and sanctions, in part. (*Id.* at 1–2).

Federal Rule of Civil Procedure 60(b) permits a court to relieve a party from a final judgment, order, or proceeding for the following reasons: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Rule 60(b)(6)'s "any other reason" clause is a "grand reservoir of equitable power" to do justice in a case when relief is not warranted by the other five enumerated grounds, but its availability is limited: relief will be granted only if "extraordinary circumstances" are present. *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995) (citations omitted). This Court finds that the parties have justified relief under Rule 60(b) to effectuate the parties' settlement agreement and increase efficiencies for the judiciary, including the Fifth Circuit Court of Appeals.

Accordingly, **IT IS ORDERED** that the parties Agreed Motion to Vacate Judgment in Part, (Dkt. 37), is **GRANTED**.

**IT IS FURTHER ORDERED** that this Court's orders awarding sanctions and attorney's fees, (Dkt. 18, 26, 31), are **VACATED IN PART** as to the portions awarding sanctions and attorney's fees to JPMorgan Chase.

**IT IS FINALLY ORDERED** that this Court Final Judgment, (Dkt. 33), is **VACATED IN PART** as to the portion awarding sanctions and attorney's fees to JPMorgan Chase.

The remaining terms of the Final Judgment, (Dkt. 33), and the remaining portions of this Court's orders, (Dkt. 18, 26, 31), are not affected by this order and remain in full force and effect.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 8052919

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 12313365
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Volker STROBEL, et al., Plaintiffs,

v.

Uwe RUSCH, et al., Defendants.

No. 18-cv-0656 RB/KBM
|
Filed May 17, 2021

**Attorneys and Law Firms**

Jeffrey L. Squires, Squires Legal Counsel, LLC, Albuquerque, NM, for Plaintiffs.

Uwe Rusch, Cape Coral, FL, Pro Se.

Mabel Rusch, Cape Coral, FL, Pro Se.

## ORDER VACATING SANCTIONS AWARD

ROBERT C. BRACK, SENIOR UNITED STATES DISTRICT JUDGE

**\*1** THIS MATTER comes before the Court on the Rule 60 Motion for Relief from the Orders Imposing Sanctions upon Eric Menhart and Lexero Law and the related supplemental briefing. (*See* Docs. 219–25.) Mr. Menhart moves the Court for relief under Federal Rule of Civil Procedure 60(b)(5) or 60(b)(6). (*See* Doc. 223.)

"Rule 60(b) 'is not a substitute for appeal, and must be considered with the need for finality of judgment.' " *Macias v. N.M. Dep't of Lab.*, 300 F.R.D. 529, 542 (D.N.M. 2014) (quoting *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983)). "The rule was designed to strike a 'delicate balance' between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice." *Id.* at 542–43 (quoting *Cessna Fin. Corp.*, 715 F.2d at 1444).

[Rule] 60(b)(5) permits a party to obtain relief from a judgment or order if, among other things, "applying [the judgment or order] prospectively is no longer equitable." Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if "a significant change either in factual conditions or in law" renders continued enforcement "detrimental to the public interest." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992). The party seeking relief bears the burden of establishing that changed circumstances warrant relief, *id.*, at 383 ....

*Horne v. Flores*, 557 U.S. 433, 447 (2009). Rule 60(b)(6) allows a court "to reverse its order for 'any other reason justifying relief' " outside of the circumstances set out in Rule 60(b)(1)–(5). *Searles v. Dechant*, 393 F.3d 1126, 1131 (10th Cir. 2004); *see also Gonzalez v. Crosby*, 545 U.S. 524, 5299 (2005). "Rule 60(b)(6) relief is even more difficult to attain and is appropriate only 'when it offends justice to deny such relief.' " *Orient Min. Co. v. Bank of China*, No. 2:98-CV-238BSJ, 2010 WL 624868, at \*17 (D. Utah Feb. 19, 2010), aff'd, 416 F. App'x 721 (10th Cir. 2011) (quoting *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 580 (10th Cir. 1996)). The Tenth Circuit has "sometimes found such extraordinary circumstances to exist when, after entry of judgment, events not contemplated by the moving party render enforcement of the judgment inequitable." *Cashner*, 98 F.3d at 580 (gathering cases).

Here, Mr. Menhart represents that he and Mr. Jeffrey Squires, counsel for Plaintiffs, have participated in a mediation session with the Tenth Circuit's Mediation Office. (Doc. 219 at 1.) Pursuant to that mediation, Mr. Menhart requested a limited remand to file a Rule 60 motion to vacate the sanctions award. (*See id.*) Mr. Menhart asserts that if the Court grants the motion under Rule 60(b)(5) or 60(b)(6), the appeal of the sanctions award "will not be necessary ... as the underlying litigation has already been settled by the parties." (*Id.* at 2.) Mr. Squires cryptically responds: "In his current supplement Mr. Menhart implies that Mr. Squires had agreed to the relief he was seeking, i.e., vacation of the sanctions. That is not the case. The only agreement Mr. Squires made that is relevant to Mr. Menhart's motion was that he would not comment on it." (Doc. 224 at 1.)

**\*2** Noting that Mr. Squires does not register any formal objections or present any argument in opposition to the requested relief, the Court will grant Mr. Menhart's motion under Rule 60(b)(5). In doing so, the Court does *not* find that Mr. Menhart's position regarding default judgment was justified. (*See, e.g.*, Doc. 210.) The Court reiterates its finding that Mr. Menhart filed the motion for default judgment for an improper purpose. (*See id.*) Given that settlement of this matter is imminent, however, and in recognition of

**Strobel v. Rusch, Not Reported in Fed. Supp. (2021)**

Case 1:24-cv-00756-JPW    Document 71-1    Filed 12/02/25    Page 26 of 30

limited judicial resources, the Court finds that the "factual conditions" have changed such that vacating the sanctions award is proper under Rule 60(b)(5).

**THEREFORE,**

**IT IS ORDERED** that the Rule 60 Motion (Doc. 219) is **GRANTED** and any award of sanctions issued in this lawsuit against Mr. Menhart and Lexero Law are **VACATED**.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 12313365

---

**End of Document**                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1346994
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

UNITED STATES of America, Plaintiff,

v.

L & M 93RD STEET LLC and Costas
Kondylis & Partners, LLP, Defendants.

No. 10 Civ. 7495(RMB).
|
April 5, 2011.

### DECISION & ORDER

RICHARD M. BERMAN, District Judge.

## I. Background

**\*1** On September 30, 2010, the United States ("Government") commenced this action pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619, against L & M 93rd Street LLC ("L & M") and Costas Kondylis & Partners, LLP ("Costas," and collectively, "Defendants"), the developer and architect of The Melar, a residential apartment complex in Manhattan. (Compl., filed Sept. 30, 2010.) The Government alleges that Defendants "unlawfully discriminated against persons with disabilities ... by failing to design and construct The Melar so as to be accessible to persons with disabilities." (Compl.¶ 1.) And, on September 30 and November 10, 2010, respectively, the Government submitted executed settlement agreements with L & M and Costas (collectively, "Agreements"), seeking the Court's entry of such Agreements as consent decrees. (See Govt.'s Ltr. to the Ct., dated Nov. 10, 2010, at 1 ("Together, these two proposed consent decrees resolve this action in its entirety. Accordingly, the Government respectfully requests that the Court enter the enclosed consent decrees.").)

On March 21, 2011, following a period of negotiations among the Government, L & M, and Costas which did not lead to any modification of the Agreements, the Real Estate Board of New York ("REBNY") moved pursuant to Rule 24 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") "to intervene as a defendant at this stage of the litigation, before the proposed consent decree[s are] entered." (REBNY's Mem. of Law in Supp. of Mot. to

Intervene, dated Mar. 21, 2011 ("REBNY Mem."), at 2.) REBNY argues that it should be permitted to intervene "as a matter of right" under Fed.R.Civ.P. 24(a) because, among other reasons, REBNY, a real estate trade association with 12,000 members, "has an interest in the validity and enforceability of the proposed consent decree [s]" which "the broader real-estate-development industry cannot rely solely on the defendants in this case to vindicate." (REBNY Mem. at 8, 11, 19.) Alternatively, REBNY argues that the Court should grant it "permission to intervene" under Fed.R.Civ.P. 24(b) because, among other reasons, "REBNY's proposed defenses involve issues of law and fact common to the main action," and "REBNY's intervention would not produce delay in the proceedings." (REBNY Mem. at 19–21.)

On March 28, 2011, the Government filed an opposition, arguing, among other things, that the Court should deny REBNY's motion to intervene "outright" for failure to submit with the motion " 'a pleading that sets out the claim or defense for which intervention is sought.' " (Govt's Mem. of Law in Opp'n to REBNY's Mot., dated Mar. 28, 2011 ("Govt.Opp'n"), at 8 (quoting Fed.R.Civ.P. 24(c)) .) The Government also argues that "REBNY has no interest in the transaction and property at issue in the [proposed] consent decrees," and "[D]efendants vociferously share REBNY's [alleged] interest in setting the consent decrees aside," as evidenced by Defendants' planned motion to withdraw from the Agreements ("Motion to Withdraw"). [1] (Govt. Opp'n at 13, 14; see Tr. of Proceedings, dated Mar. 14, 2011 ("Tr."), at 17:22–23.) Alternatively, the Government contends that "REBNY has failed to identify common claims or defenses," and "[i]ntervention ... would merely prolong this case." (Govt. Opp'n at 17, 19.)

[1]     Defendants' opening brief in support of their Motion to Withdraw is due on April 15, 2011; briefing will be completed on May 13, 2011.

**\*2** On April 1, 2011, REBNY filed a reply, requesting, among other things, that the Court excuse its failure to file a pleading because the Court is "otherwise apprised of the grounds for the motion and there is an absence of prejudice to the parties." (REBNY's Reply Mem. of Law, dated Apr. 1, 2011 ("REBNY Reply"), at 9 (internal quotation marks omitted).) The parties waived oral argument. (Tr. at 31:17–21.)

**For the reasons set forth below, REBNY's motion to intervene is respectfully denied.**

## II. Legal Standard

Intervention as of right under Rule 24(a) is granted when all four of the following conditions are met: "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n,* 471 F.3d 377, 389 (2d Cir.2006).

Permissive intervention under Rule 24(b) "may be granted when an applicant's claim or defense and the main action have a question of law or fact in common," *AT & T Corp. v. Sprint Corp.,* 407 F.3d 560, 561 (2d Cir.2005) (internal quotation marks omitted), and when intervention will not "unduly delay or prejudice the adjudication of the original parties' rights," Fed.R.Civ.P. 24(b)(3); *see AT & T,* 407 F.3d at 561–62.

A motion to intervene "must ... be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed.R.Civ.P. 24(c).

## III. Analysis

Preliminarily, even if the Court were able to find REBNY eligible to intervene (which it would not for the reasons set forth below), REBNY's failure to submit a pleading that sets out the claim or defense for which intervention is sought, *see* Fed.R.Civ.P. 24(c), "alone warrants denial of the motion to intervene under both Rule 24(a) and (b)," *Gen. Ins. Co. of Am. v. Clark Mali Corp.,* No. 08 Civ. 2787, 2010 WL 807433, at *8 (N.D.Ill. Mar. 10, 2010); *see SEC v. Bear, Stearns & Co.,* No. 03 Civ. 2937, 2003 WL 22000340, at *4 & n. 3 (S.D.N.Y. Aug. 25, 2003).

## (1) Intervention of Right

REBNY argues, among other things, that "[a] settlement between two parties that affects a third party's legally protected rights can suffice as an 'interest' warranting intervention of right;" and REBNY "would make a more vigorous presentation" than Defendants who have "demonstrated an interest in settling the case." (REBNY Mem. at 11, 18 (citing *Brennan v. N.Y.C. Bd. of Educ.,* 260 F.3d 123, 130, 132–33 (2d Cir.2001)).) The Government responds, among other things, that REBNY misconstrues

the content of consent decrees "as well as their limited precedential weight"; and "REBNY has identified no defects in [D]efendants' representation by sophisticated counsel who have been involved in this dispute for years [and] ... cannot overcome the presumption that [D]efendants adequately represent REBNY's interest in opposing settlement." (Govt. Opp'n at 12, 14.)

**\*3** REBNY has not shown that its interest is "direct, substantial, [or] legally protectable." *Wash. Elec. Coop. v. Mass. Mun. Wholesale Elec. Co.,* 922 F.2d 92, 96–97 (2d Cir.1990). The Agreements, as noted, were entered into among the Government, L & M, and Costas, all of whom were represented by capable and experienced counsel. REBNY speculates that the Court's entering of consent decrees "would give a green light for future enforcement actions ... and would embed the decree[s] as a template for resolution of such actions," which, in turn, "would cause tremendous uncertainty and expense in the New York real estate market." (REBNY Mem. at 14.) But, "an interest [as propounded here by REBNY] ... that is contingent upon the occurrence of a sequence of events before it becomes colorable[ ] will not satisfy the rule." *Wash. Elec.,* 922 F.2d at 97; *see H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.,* 797 F.2d 85, 88 (2d Cir.1986). Moreover, a consent decree is "not a ruling on the merits ... that ... becomes precedent applicable to any other proceedings." *Langton v. Hogan,* 71 F.3d 930, 935 (1st Cir.1995) (emphasis omitted); *see United States v. Tex. E. Transmission Corp.,* 923 F.2d 410, 414 (5th Cir.1991); *Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 531 (7th Cir.1988) ("When a would-be intervenor says that it fears only the *stare decisis* effect of a decision ... the desire to block a settlement is never a legitimate reason to intervene, because if the case settles the possibility of an authoritative appellate decision vanishes, and with it the only substantial concern of the putative intervenor."). REBNY's claim of strong and significant interest in this case is also somewhat inconsistent with its failure to seek intervention in two similar cases in this district in which consent decrees were recently approved. *See United States v. Berk–Cohen Assocs.,* No. 09 Civ. 4368 (Feb. 19, 2010[# 13] ) (Cote, J.); *United States v. CVP I, L.L.C.,* No. 08 Civ. 7194 (Oct. 15, 2010[# 52] ) (Stein, J.); (Tr. at 29:6–12 (Court: "[Y]ou never intervened in those proceedings." Counsel for REBNY: "We did not, your Honor.").)

REBNY identifies no "direct" interest in any of the (property or other) rights implicated in the Agreements. *Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.,* 725 F.2d 871, 874 (2d Cir.1984) ("[A]n interest must be direct, as opposed

to remote or contingent."); *see Wash. Elec.,* 922 F.2d at 96–97. This is a different posture than that of intervenors in cases cited by REBNY such as *Brennan,* 260 F.3d at 132, where employees sought "to protect their present employment status —in particular, their seniority rights," which they stood to lose "ineluctably [as] the result of the proposed [settlement a]greement," and *New York Public Interest Research Group, Inc. v. Regents of University of State of New York,* 516 F.2d 350, 352 (2d Cir.1975) (per curiam), where a pharmacists' association had "a sufficient interest to permit it to intervene since the validity of a regulation from which its members benefit is challenged" and could result in "an adverse decision" with "stare decisis effect."

**\*4** And, as both parties acknowledge, "[D]efendants themselves dispute the validity of the consent decrees." (REBNY Reply at 7.) "[W]here the putative intervenor and a named party have the same ultimate objective," the movant "must rebut the presumption of adequate representation by the party already in the action." *Butler,* 250 F.3d at 179–80; *see Wash. Elec.,* 922 F.2d at 98. REBNY has made no showing that L & M (a REBNY member (*see* Govt. Mem. at 20)) or Costas inadequately will pursue relief from the Agreements (as evidenced by the proposed filing of the Motion to Withdraw), and there is no "evidence of collusion, adversity of interest, nonfeasance, or incompetence ... to overcome the presumption of adequacy," *Butler,* 250 F.3d at 180.

**(2) Permissive Intervention**
REBNY argues, among other things, that its "challenges to the validity and enforceability of the proposed consent decree[s]" involve issues of law and fact common to the main action and "[t]here is no colorable argument that intervention would delay the proceedings." (REBNY Mem. at 20–21.) The Government responds, among other things, that the consent decrees nowhere resolve the legal question REBNY seeks to adjudicate and ' "[t]he prospect that a new party might string out a case that the original parties want[ed] to resolve usually is a compelling objection to intervention rather than a reason to allow it.' " (Govt. Opp'n at 17, 18 (quoting *Bethune Plaza,* 863 F.2d at 531).)

The Court respectfully denies REBNY's motion for permissive intervention. *See H.L. Hayden,* 797 F.2d at 89. Assuming, without deciding, that REBNY's interest in exploring the relationship between the FHA, 42 U.S.C. § 3604(f)(3)(C), and Local Law 58 of 1987, N.Y.C. Admin. Code tit. 27 (amended 2008), constitutes "a claim or defense that shares with the main action a common question of law or fact," Fed.R.Civ.P. 24(b)(1)(B), REBNY's intervention in the current settlement dispute could "unduly delay" the proceedings, Fed.R.Civ.P. 24(b)(3); *see N .Y. News, Inc. v. Kheel,* 972 F.2d 482, 487 (2d Cir.1992); *Ragsdale v. Turnock,* 941 F.2d 501, 504 (7th Cir.1991). "[I]ntervention at this time would render worthless all of the parties' painstaking negotiations because negotiations would have to begin again and [the intervenor] would have to agree to any proposed consent decree." *City of Bloomington v. Westinghouse Elec. Corp.,* 824 F.2d 531, 535 (7th Cir.1987). [2]

[2]    *United States v. American Cyanamid Co.,* 556 F.Supp. 357, 358 (S.D.N.Y.1982), *aff'd,* 719 F.2d 558 (2d Cir.1983), where termination of a proposed consent decree would have ended the intervener's "substantial ... annual sales" and "effectively force[d] it out of business," is distinguishable. REBNY has not shown such a "direct and substantial adverse impact" in this dispute over a single residential building (The Melar). *Am. Cyanamid,* 719 F.2d at 561; *see* Moore's Fed. Prac.3d § 24.10[2][c], at 24–69; *U.S. Postal Serv. v. Brennan,* 579 F.2d 188, 191 (2d Cir.1978) ("[W]e fail to see what [the movant] would ... gain by intervening and superimposing a motion ... to secure the same relief [sought by defendants].");
*see also R Best Produce, Inc. v. Shulman–Rabin Mktg. Corp.,* 467 F.3d 238, 240 (2d Cir.2006).

**IV. Conclusion**
For the foregoing reasons, REBNY's motion to intervene [# 36] is respectfully denied.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1346994

---

2017 WL 11916490
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Yowan YANG

v.

ACTIONET, INC.

Case No.: CV 14-00792-AB (PJWx)
|
Filed June 29, 2017

**Attorneys and Law Firms**

Vincent James DeSimone, V. James DeSimone Law, Marina Del Rey, CA, Kaveh Navab, Navab Law, Marina Del Rey, CA, Lawrance Alexander Bohm, Ryann Elizabeth Hall, Bohm Law Group Inc., Marina Del Rey, CA, for Yowan Yang.

Philip Lane Ross, Littler Mendelson, Walnut Creek, CA, Rebecca M. Aragon, Emily Patajo, Ian T. Maher, Littler Mendelson PC, Los Angeles, CA, Robin J. Samuel, Baker & McKenzie LLP, Los Angeles, CA, Tao Y. Leung, Hogan Lovells U.S. LLP, Los Angeles, CA, for ActioNet Inc.

**Proceedings: [In Chambers] Order Granting Parties' Joint Motion to Vacate Judgment (Dkt. No. 376)**

ANDRÉ BIROTTE JR., United States District Judge

**\*1** Plaintiff Yowan Yang ("Plaintiff") and Defendant ActioNet, Inc., move this Court to vacate the judgment entered by the Court on March 17, 2016 (Dkt. No. 376) pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

Rule 60(b) may be utilized to seek vacatur of a judgment when parties to a dispute have reached a settlement, and thus it would be inequitable for the judgment to remain in effect. Two equitable considerations should be addressed where the parties seek to vacate a judgment upon settlement: (1) "the competing values of finality of judgment and right to relitigation of unreviewed disputes" and (2) "the consequences and attendant hardships of dismissal or refusal to dismiss." Dilley v. Gunn, 64 F.3d 1365, 1371 (9th Cir. 1995); American Games, Inc. v. Trade Prods., Inc., 142 F.3d

1164, 1168 (9th Cir. 1998). "The purpose of this balancing process is to enable a district court to consider fully the consequences of vacatur." Bates v. Union Oil Co. of Calif., 944 F.2d 647, 650 (9th Cir. 1991).

Here, both considerations relevant to a motion for vacatur weigh in favor of granting the parties' joint request. The Court finds no issue as to the competing considerations of finality of judgment and the relitigation of unreviewed disputes. By virtue of having reached a settlement and jointly stipulating to vacate, the parties have given up their ability to have the judgment reviewed on appeal. The settlement will finally resolve all disputes arising in connection with the instant matter and will result in closure for both parties. Additionally, the parties' settlement is explicitly conditioned upon vacatur of the judgment. The Ninth Circuit directs that a court should, where appropriate, support the negotiations and terms of settlement. See Ahern v. Central Pacific Freight Lines, 846 F.2d 47, 48 (9th Cir. 1988) ("The Ninth Circuit is firmly 'committed to the rule that the law favors and encourages compromise settlements.'") (quoting United States v. McInnes, 556 F.2d 436, 441 (9th Cir. 1977)). If the settlement is not finalized, the parties will be compelled to engage in a potentially lengthy appeal, and will be forced to incur additional costs. Finally, the Court finds that the issues in the instant matter are relevant to the specific parties before the Court, and do not create a danger that the interests of a third party or the public will be negatively impacted by vacatur.

Based on the foregoing, the Court hereby **GRANTS** the Parties' Motion to Vacate Judgment Pursuant to FRCP 60(b) (Dkt. No. 376). The judgment entered against Defendant ActioNet, Inc. in favor of Plaintiff Yowan Yang (Dkt. No. 301) is hereby vacated. It is further ordered that Plaintiff's Motion for Attorney's Fees (Dkt. No. 343) and Plaintiff's Applications to the Clerk to Tax Costs against Defendant (Dkt. Nos. 346, 352, 359) are DENIED as moot. Finally pursuant to the stipulation of the parties, this matter is HEREBY DISMISSED with prejudice, all parties to bear their own costs and fees.

**\*2 IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 11916490

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.